United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>IVAN CERNA, et al.,<br><br>    Defendants.<br>———————————————————/ | No. CR 08-0730 WHA<br><br>**MEMORANDUM OPINION RE FINAL PROTECTIVE ORDER FOR WITNESS SECURITY** |

In this RICO gang prosecution, this memorandum opinion and the accompanying protective order are directed at balancing the need to protect civilian witnesses from retaliation against the need of the defense to prepare for trial. The Court previously granted the government's motion for a protective order based on the government's showing of good cause pursuant to Rule 16(d)(1), finding that if the locations and identities of key cooperating witnesses, victims, and their families were known, their safety would be at risk. On June 25, 2009, the Court issued a tentative protective order patterned after the Court's protective order in the *Fort* case, an earlier RICO gang prosecution. The tentative protective order directed the parties to meet and confer regarding the terms of a final protective order, as they had volunteered to do, then file a joint report identifying any remaining areas of disagreement. The parties met and conferred multiple times but eventually indicated that they remained too far

apart on too many issues to stipulate to a joint proposal. After additional briefing from the parties raising objections and suggestions to the tentative protective order, this final protective order now addresses the extent to which otherwise discoverable materials may (or may not) be redacted to keep defense teams from learning of civilian witnesses' identities and locations.

This order does not require any particular materials to be produced, but rather governs the handling of materials that are produced and the timing thereof. In federal prosecutions, of course, the defense has no right to a *list* of prospective witnesses, except in death-penalty cases — and even then only three days before trial and subject to security restrictions of 18 U.S.C. 3432. Likewise, under the Jencks Act, 18 U.S.C. 3500, "witness statements" (as statutorily defined) may be withheld until after the direct testimony of the witnesses, although this may result in mid-trial continuances.

The defense, however, *does* have a right to receive Rule 16 discovery *before* trial, subject only to protective orders under Rule 16(d)(1). And, the defense has a right to receive *Brady* material no later than the point in the case when there is a reasonable probability that if the evidence were not disclosed to the defense, the result of the proceeding would be different. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).[1] If such disclosures include the names of civilian witnesses, those names must be part-and-parcel of the mandated disclosure unless a protective order under Rule 16(d)(1) restricts or delays such disclosures.

The Court finds that the government has made a substantial showing of danger to inculpatory civilian witnesses. The danger arises out of substantial showings by the government that (1) the RICO defendants are and have been at all relevant times members of the MS-13 gang; (2) the gang has carried out numerous murders and other acts of violence (for which members are under indictment in this case); (3) the gang and its confederates, some of whom are at large, abide by a code that requires that cooperating witnesses and their families be killed; (4) actual violence and threats have already been made against witnesses in this case; and (5) if the location and identity of key government witnesses were known, their safety (and

---

[1] If the material constitutes true Jencks Act "statements," *Brady* disclosure need not be until after the direct testimony. The *Brady* problem then must be dealt with via continuances. *United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004).

2

1  their families' safety) would be at risk.  The Court finds that these considerations warrant
2  restrictions on witness-identifying information.

3  The accompanying protective order will improve witness security while also allowing
4  greater access by defense teams to discoverable materials.  Defense teams will, however, be
5  substantially restricted in the use and dissemination of these materials.  Witnesses' names will
6  be released to defense teams in stages before trial.  The protective order, among other things,
7  will facilitate interviews at the federal building and reduce the need for criss-crossing the
8  witnesses' neighborhoods.  Defense investigations will be conducted with lower profiles,
9  resulting in less speculation and attention in the neighborhood.

10  The order will limit counsel as to how and when they can divulge protected information,
11  while still allowing them to solicit information.  The order will prevent certain protected
12  information that defense teams might otherwise learn on their own from falling into the wrong
13  hands.  The protective order will bar defense teams from suggesting to third parties that certain
14  persons are cooperating with law enforcement.  Defendants themselves will be barred from
15  access to identifying information until twenty-one days before trial and will never have access
16  to (specific) locator information.

17  These are only some of the ways in which witness security will be protected.  It bears
18  repeating that the protective order only pertains to materials otherwise discoverable.  It does not
19  require production of anything not already discoverable.

20  The protective order will also improve case management by setting an orderly schedule
21  for the release of witness information before trial in conjunction with the final scheduling order.
22  This will help avoid the need for continuances on the eve of trial , and thereby relieve pressure
23  on the trial date and enhance witness security.  It is also worth noting that this case will be
24  severed into multiple  trials, and the protective order builds in security so that confidential
25  information will not be exposed too early to defendants with a later trial date.

26                              *        *        *

27  Defendants have put forward a number of objections and suggestions to clarify and
28  narrow the protective order so that they may adequately prepare for trial without compromising

3

the goal of safeguarding the identities and locator information of protected witnesses. The final protective order incorporates a number of their suggestions. Several edits have been made to clarify that most of the provisions of the protective order do not apply to defense teams that do not choose to become "eligible" to receive confidential information under its terms, although ineligible counsel are required to report immediately to the Court and the government if they receive any protected information as to which they are ineligible, or if they learn of a probable breach of the protective order. The final protective order also clarifies that defense teams are not required to treat a witness as "protected" under the terms of the protective order until they receive confirmation from the government that the witness is in fact on the list of protected witnesses. The final protective order eliminates the requirement that after inspecting unredacted materials, defense counsel must prepare a list for the government of all protected individuals disclosed in the materials or whose names appear in materials obtained by subpoena or other means. Because the government presumably already knows the identities of the protected witnesses it is disclosing, there is no need for this requirement, and its elimination will help assuage concerns raised by defense counsel about the disclosure of attorney-work product and information protected by the attorney-client privilege.

Defendants object that Rule 16(d)(1) only authorizes regulation of discovery that defendants receive from the government, not discovery that they develop on their own or through Rule 17 subpoenas. They argue that the only proper mechanism for issuance of the protective order would be pursuant to 18 U.S.C. 1512–1515. Under Section 1514(b), a court may issue a protective order prohibiting harassment of a witness or victim if, upon motion by the government and after a hearing where any adverse party named in the complaint has the right to present evidence and cross-examine witnesses, the Court finds by a preponderance of the evidence that harassment of an identified victim or witness exists or that a protective order is necessary to prevent or restrain witnesses from being, *inter alia*, harassed, threatened, killed, or intimidated under Section 1512.

Defendants offer no case law or authority to support their contention that the Court lacks the authority to issue the present protective order under Rule 16(d)(1), which provides that:

4

> At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect *ex parte*.

Nowhere does Rule 16(d)(1) limit the Court's authority to regulate the disclosure, dissemination, and use of discovery by excluding from the Court's discretionary power subpeonas and other discovery collected by the defense from sources other than the government. The final protective order is a reasonable exercise of that discretion to protect the safety of witnesses in a case that presents a strong risk of witness intimidation and harassment. Defendants' objection to the protective order on this ground is overruled.

Defendants have raised numerous objections to the tentative protective order's restrictions on disclosures of protected information by defense teams to their clients and to third-party witnesses, but it would be impossible to incorporate all of their suggestions without eviscerating the effectiveness of necessary protections to witness safety. Except as addressed specifically above, their objections are **OVERRULED**.

Defendants object that the protective order would place undue restrictions on communications between defense counsel and their clients by limiting disclosure of protected information to defendants from their defense teams. They argue that these restrictions would so undermine the attorney-client relationship as to violate, *inter alia*, the Sixth Amendment rights to effective assistance of counsel and to present a defense, the First Amendment right to freedom of speech, the Fifth Amendment right to testify, the Eighth Amendment right to present mitigating evidence when a defendant is charged with a capital crime, and attorneys' ethical duties of confidentiality, loyalty, and zealous advocacy.

These protests are exaggerated. The protective order allows information about protected witnesses' possible testimony or impeachment thereof to be disclosed to defendants at any time, as necessary for an effective defense, so long as no identifying information is disclosed and so long as the revelation will not suggest the possible identity of any protected witness or his or her family. Furthermore, restrictions on the disclosure of protected witnesses' identities to

5

1  defendants expire before his or her trial, with the exception that specific locator information,
2  which defendants do not need for an effective defense, shall never be disclosed.

3        Defendants also contend the protective order would hamper defense investigations by
4  limiting what defense teams can say to third-party witnesses, and by placing restrictions on their
5  ability to contact and interview protected witnesses.  While the order prevents counsel from
6  *divulging* protected information to witnesses, it liberally allows them to freely *solicit* any
7  information.  The purpose of a witness interview is to ask questions and to gather information,
8  not to plant ideas and confidential information in the heads of interviewees.  This restriction is
9  necessary to prevent protected witnesses' identities and locator information from falling into the
10  wrong hands.  By restricting defense teams' contact with protected witnesses and limiting their
11  interviews to the federal building, the order balances defendants' need to gather information
12  from witnesses with the risks witnesses face from exposure to the MS-13 in their
13  neighborhoods.

14        Additionally, defense teams are not required to become eligible under the protective
15  order.  They are free to pursue their defense without the benefit of receiving protected
16  information under the protective order.  The Court is cognizant that defense teams which elect
17  to become eligible under the protective order will be restricted in how they can use the sensitive
18  information that they will receive.  These restrictions are necessary and reasonable to protect
19  the safety of witnesses.

20        \*      \*      \*

21        The protective order provides for two levels of access to identifying information
22  concerning materials covered by the government's Rule 16 and/or *Brady* obligations.  Those
23  witnesses most in need of protection are designated as "primary witnesses."  All other potential
24  trial witnesses are designated as "secondary witnesses."  As to both types, the order imposes
25  restrictions.  They are more stringent as to primary witnesses.

26        The Court has carefully reviewed the government's *ex parte* submissions setting forth
27  security concerns, including its *ex parte* witness-by-witness submission.  In assessing the
28  strength of the government's showing, the Court has considered the following factors, among

6

others:

    (a) Whether the witness and/or relatives are in a witness relocation program in connection with this case;

    (b) Whether the witness has agreed to cooperate in connection with this case;

    (c) Whether the person is a relative of a critical and at-risk witness (even though the person himself has little evidence to offer);

    (d) Whether the testimony of the witness is likely to be highly inculpatory, so as to increase an incentive to harm the witness;

    (e) Whether the witness has already been threatened by MS-13 members in connection with this case; and

    (f) Whether the witness resides now in a distant location.

*    *    *

Based on the foregoing, this order finds that the government has demonstrated the need for the following security levels in its witness-by-witness submissions:

| **Primary Witnesses** | **Secondary Witnesses** |
|---|---|
| P1–54 | S1-44 |

A chart assigning a witness code in the numbering sequence above to the name of each protected witness has been filed under seal accompanying this memorandum.

**IT IS SO ORDERED.**

Dated: September 16, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7