UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA (LB) |
|---|---|
| Plaintiff, | AMENDED ORDER RE MARCH 19 HEARING |
| v. | |
| IVAN CERNA, *et al.* | |
| Defendants. | |

On March 19, 2010, following a referral from the district court, the Court held a hearing regarding (A) the defense's recent Criminal Justice Act (CJA) request for funding and (B) related issues about the production of certain audio recordings. As to category A, the Court addressed any defense-related funding issues *ex parte* and under seal. As to category B, the parties addressed certain production-related issues that may be relevant to future hearings, and so the Court memorializes them here and makes additional suggestions. The Court also suggests a further case management conference, as discussed below. (This amended order changes only the time line.)

**I. GOVERNMENT PRODUCTION OF VIDEO AND AUDIO RECORDINGS**

Depending on timing, the government's production of items like transcripts and indexes might affect the timing and amount of CJA funds needed for defense transcriptions. Accordingly, the parties discussed the following issues about the audio recordings.

A. <u>Timing of Court-Ordered Government Disclosures</u>

In its 12/17/09 case management order, the district court ordered the government to make

AMENDED ORDER
RE MARCH 19 HEARING (CR 08-0739 WHA (LB))

certain disclosures about the video and audio recordings. *See* docket # 998.

  1. <u>Government Disclosure Deadlines For RICO Defendants Not Facing the Death Penalty</u>

| Date | Item |
|---|---|
| 9/13/10 | Trial date[1] |
| 4/26/10 | (A) List of recordings to be used in case-in-chief (possibly 4/19/10 deadline)[2] and (B) index of all recordings provided in discovery (to include date of conversation and participants, if known) |
| 8/2/10 | Translations/transcripts of conversations/statements to be used at trial |

  2. <u>Government Disclosure Deadlines for RICO Defendants Facing Death-Penalty Notice</u>

| Date | Item |
|---|---|
| 8/1/11 | Trial date |
| 12/30/10 | (A) List of recordings to be used in case-in-chief and (B) index of all recordings provided in discovery (to include date of conversation and participants, if known) |
| 4/1/11 | Translations/transcripts of conversations/statements to be used at trial |

**B.** <u>Index Produced to Date, Status Of Index To Be Produced In April, and Status of Transcripts</u>

In previous court filings in February and March 2010 (*see* docket ## 1359 and 1472), the parties addressed the index produced to date. *See* docket entries 1359 and 1472. In its March 18 order, the district court noted that a defense declaration established, among other things: (1) 3,200 video and audio recordings have been produced; (2) most are in Spanish; (3) different productions have different bates prefixes, and some have no prefixes at all; (4) the DH prefix references

---

[1] The district court's scheduling order contemplates a possible second trial, depending on how many defendants plead guilty, and sets forth different deadlines for that second trial. Because this court is evaluating only what the government might produce in the near future (as part of its assessment of what defense funding is appropriate), the deadlines for the September trial are the relevant deadlines here.

[2] The April 26 deadline likely is an April 19 deadline. *See* Defense 2/22/10 Motion for Discovery and to Modify Scheduling Order (docket # 1359) (discussing incomplete index); Government Response (docket # 1473) (will provide updated index within 30 days of hearing); 3/18/10 Order (docket # 1584) (government agreed to provide updated index in 30 days; deadline is 4/19/09 at noon). The government suggested that it may clarify the deadline with the district court.

AMENDED ORDER
RE MARCH 19 HEARING (CR 08-0739 WHA (LB))

2

consensual calls, body wires, jail calls, and other recordings in the ICE investigation in this case; (5) some disks do not have bates conventions and are labeled, *e.g.*, Disk 1, but may contain hundreds of recordings; and (5) the index is incomplete in that it omits recordings, groups multiple recordings under a single bates number, and covers (according to the defense) only 542 of the 3,200 recordings. *See* 3/18/10 Order (docket # 1584). The government has disclosed several hundred transcripts. *Id.* According to the defense, 140 of the transcripts were produced without referencing the underlying audio recordings. *Id.*

At the hearing, government counsel produced -- as an example -- its draft of an index containing index numbers, dates of recordings, audio file names, and identifiable participants. At this point, the index is incomplete but the government is "toiling" (see docket # 1473 at 2) to comply with the district court's case management order requiring a complete index by the April 19 or April 26 deadline. The government represented that it continues to work on its index to meet the April deadline and also has contract or ICE transcribers working on transcripts, which it will produce (in draft form) as it obtains them. As of March 19, the government could not provide any kind of time line about what transcripts it might produce, and when. It also could not provide specifics about how many translators it was using to transcribe transcripts.

C. Availability of Accessing Content of Transcripts In Other Ways

During the hearing, the parties discussed how in wiretap cases, agents create monitoring logs (sometimes called line sheets) of intercepted calls. The logs identify the participants to the conversation and contain summaries (and translations) of the intercepted conversations. The government produces those logs in discovery, which allows the defense to access the contents of the calls before transcribing them (and allows prioritizing the transcription of more relevant calls). *See* Protocol Regarding Discovery in Complex Cases (March 12, 2004).[3] According to the government,

---

[3] Few cases discuss discovery of monitoring logs, probably because the government discloses them routinely. *See, e.g.*, *United States v. Mincoff*, 574 F.3d 1186, 1199 (9th Cir. 2009) (turned over line sheets in discovery), *cert. denied*, 130 S. Ct. 1108 (2010); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (denying defense motion for bill of particulars when government disclosed line sheets, documents given by the informant to the government, all documents obtained in the five searches, and an index of all recordings). That approach makes

AMENDED ORDER
RE MARCH 19 HEARING (CR 08-0739 WHA (LB))

3

1  no monitoring logs, spreadsheets, or indexes of the contents of the audio recordings exist here.

2  D. <u>Kind of Recordings At Issue Here</u>

3  According to the defense, the 3,200 audio recordings at issue are from different sources: body wires and consensual calls (from the DH series totaling approximately 127 hours), additional body wire meetings (65 hours), consensual calls (4 hours), jail calls (409 hours), and video sound (two hours).[4]

As to the jail calls, some were produced with the DH production, some were produced on March 10, 2009 with an F prefix, some in April 2009 (on disks labeled, for example, 1 to 17, but containing 1500 recordings), and some on July 7, 2009 on a disk labeled "Santa Rita Jail calls" without further identification. *See* Defense 2/22/10 Motion for Discovery (docket # 1359). Some of these recordings are jail calls and other recordings from an FBI intelligence gathering about MS-13 that was not part of the ICE investigation that led to the indictment in this case. *See* CR 756 at 4.

Different categories of recordings are more difficult to transcribe. For example, it is easier (and less expensive) to transcribe jail calls or other taped telephone calls than it is to transcribe recordings from body wires or audio/video recordings of outdoor meetings.

E. <u>Bottom Line: The Government Apparently Has Not Transcribed Most Recordings</u>

The 3,200 recordings are in Spanish, and relatively few transcripts have been produced. The government has agreed to produce transcripts in draft form, but has no other documentation of the

---

sense: "[p]roviding broad and early discovery often promotes the truth-seeking mission of the Department and fosters a speedy resolution of many cases." DAG Memorandum For Department Prosecutors, *Guidance for Criminal Prosecutors Regarding Discovery* (January 4, 2010) at 9 (circulated to the judiciary by cover letter dated January 4, 2010 and available on the Internet). A few courts have held that monitoring logs are discoverable. *See, e.g., United States v. Feola*, 651 F. Supp. 1068, 1145 (S.D.N.Y. 1987) (logs of defendants' own statements discoverable under Rule 16); *United States v. Wright*, 121 F. Supp.2d 1344, 1350-52 (D. Kan. 2000) (ordering disclosure as relevant to defense minimization challenge). In any event, the government drafted and agreed to the March 2004 Protocol, which requires disclosure. *See* DAG Memorandum at 10 ("[p]rosecutors must comply with these local rules [regarding discovery], applicable case law, and any final court order regarding discovery").

[4] The defense proffered these breakdowns in the *ex parte* CJA matter and agreed that the Court could disclose the information here.

AMENDED ORDER
RE MARCH 19 HEARING (CR 08-0739 WHA (LB))
4

contents of the recordings (like monitoring logs or the kinds of rough indexes that often exist in investigations). What that means is that the government must be simultaneously (A) transcribing recordings as fast as its currently-dedicated resources allow and (B) relying on agents or other Spanish-speaking government employees or contractors to review the recordings by the April deadline to identify them for the discovery index and for the list of recordings to be introduced at trial. It also means that the government line prosecutors likely do not know the contents of many of the recordings.

F. Possibilities for Coordination of Resources To Speed Up Translation and Indexing

The Court discussed some of the following possibilities with the parties and raises additional ones here. At the March 26 hearing, the Court will suggest scheduling a discovery case management conference with the government and a subset of the defense lawyers to address these issues.

1. Joint Index

From experience, and based on the level of description in the defense pleadings about the recordings, the Court is confident that the defense has compiled an index of the recordings, probably in an Excel spreadsheet or the equivalent. It likely is bare bones and likely consists of fields identifying any labeling conventions, the number of recordings on each disk (*e.g.*, 1 to 257), and the length of the recordings. The Court suggests that the defense consider providing this index electronically to the government. At minimum, it will allow the government to fill in information and not start from scratch for disks where it has not begun indexing.

Information on line sheets generally includes date and time of the recording, the participants and their locations, and the content of the recording. Content can be ascertained by translation, which is addressed in the next section, so the Court addresses only general indexing here: date and time, location, and participants.[5] Generally, this information can be provided only by the

---

[5] The district court's case management order did not specify time and location, *see* CR 998, but to the extent that information is ascertainable and not onerous, it makes sense to include it by including a cross-reference in the index to any report referring to the conversation. If the information is governed by the protective order, then the government would omit it.

AMENDED ORDER
RE MARCH 19 HEARING (CR 08-0739 WHA (LB))
5

1 government. The Court appreciate that individual defendants can authenticate their own voices, but
2 that is not feasible given the 3,200 recordings here and the length of the investigation. After the
3 government identifies participants, then individual defendants can review their recordings.

4 As to how the government identifies date, time, location, and participants, the Court
5 suggested certain shortcuts.

6 First, as to audio recordings gathered by the FBI, it seems likely that the FBI prepared an
7 index (possibly in the form of a case insert), and probably the FBI prepared a 302 with participant
8 and content information. Redacted 302s could be produced identifying participants and content (and
9 could be easily cross-referenced in the index). Analysts may have prepared spreadsheets similar to
10 monitoring logs. *See* Docket # 1359-2 at 4, Declaration of Blair Perilman in support of Defense
11 Motion for Discovery (referencing similar organization in similar cases).

12 Second, based on the government's representations at the March 19 hearing, ICE did not
13 prepare indexes like those discussed in the last paragraph that often are prepared routinely by agents
14 in complicated undercover investigations. But presumably ICE prepared reports of investigation
15 (ROIs) memorializing important meetings and summarizing important conversations. Persons
16 wearing wires are monitored during the recordings and debriefed after the recordings, and ROIs
17 summarize what happened. Operations plans (redacted to eliminate any confidential information)
18 might show locations and participants. If the information is not protected from disclosure now under
19 the protective order, these reports could be disclosed in redacted form. If the reports have been
20 disclosed already, the index could reference them. Alternatively, even without disclosing reports
21 now protected under the protective order, reviewing the reports would allow the government to
22 identify the participants in a recording and put that information in the index. (The district court's
23 case management orders do not require the government to disclose in advance how it will
24 authenticate participants to conversations. But the index must contain the participants if known.)

25 Third, given that the government has produced transcripts without identifying what
26 recordings they transcribe, it would be helpful if the index referenced any transcript for a recording.

27 The Court appreciates the defense will have "meaningful access to the tapes" by the
28 prosecutor's providing all recordings and transcripts for what it introduces at trial. *See United States*

AMENDED ORDER
RE MARCH 19 HEARING (CR 08-0739 WHA (LB))

6

*v. Parks*, 100 F.3d 1000, 1308 (7th Cir. 1996) (providing 65 hours of tapes and transcripts for four hours for tapes to be used at trial provides "meaningful access").  The problem is that approach is not useful for either the government or the defense right now.  From the government's perspective, paring down the case with guilty pleas makes it much easier to focus on the trials that will happen. While a prosecutor's perspective can be "the defendants know what they did," that approach is not useful in a case like this where co-housed defendants make it harder to negotiate pleas.  Also, defendants who access the evidence against them generally can make a faster decision about whether to accept a plea offer.  From the defense's perspective, the 40 boxes of paper discovery and the 3,200 hours of audio recordings make an overwhelming task.

    2. <u>Joint or Coordinated Production of Transcripts (No Duplication of Efforts)</u>

All parties -- prosecutors and defense lawyers -- have an interest in knowing the contents of the recordings.   Given the absence of monitoring logs and descriptive indexes, translations are one way to accessing the recordings' contents.   Also, even if the government identifies only certain recordings that it will use in its case-in-chief, it likely will want at least rough translations of additional recordings, particularly with certain categories of recordings like body wires, to anticipate defenses and prepare its rebuttal case.

The problem is that if both parties undertake separate translations (both funded ultimately by the taxpayers), there is duplication of effort and expense.  Also, time lines for translating the recordings might be expedited significantly if the parties avoided duplicating transcripts.  Finally, any concerns about the use of "government" versus "defense" translators can be allayed by using certified court interpreters like Haydee Claus, who already has prepared transcripts from the first productions.[6]  Indeed, in wiretap litigation, the government routinely uses court interpreters to avoid any defense objections or concerns.

To address this situation, the Court suggests that the parties confer, come up with jointly acceptable interpreters, and use those interpreters to translate and transcribe the recordings that the

---

[6] To the extent that Ms. Claus's participation was not obvious from the March 19 hearing, the defense agreed to disclosure of this fact.

AMENDED ORDER
RE MARCH 19 HEARING (CR 08-0739 WHA (LB))
7

government agrees that it wants transcribed. Those recordings could either be the recordings that the government intends to use at trial or a broader set. To the extent that the defense already has transcribed these recordings (a situation that likely is true for recordings in the DH series), it could provide them to the government, and the government could concentrate on other recordings not transcribed yet. That saves everyone money: the government, the defense, and the taxpayers. It also provides the defense and the government faster access to transcripts that they both want.

### 3. Meaningful Timelines for Indexes and Transcripts

In order to avoid duplication of substantial taxpayer money on transcripts, the parties need to meet and confer and come up with achievable time lines for producing transcripts. That way, the Court can minimize the duplication of expenditures for transcripts. Put another way, it will cost a fortune in CJA funds to transcribe transcripts solely for the defense. That approach makes no sense if the government also is transcribing recordings simultaneously. Identifying what the government can produce, and when, will allow the Court allocate CJA funds appropriately.

Similarly, the index at minimum will identify the recordings that the government will transcribe for trial. It may also provide useful information to guide defense requests for translations and transcriptions.

### 4. Government Resources

In pleadings and in person, the line prosecutor has stated that he is working as hard as he can and as fast as he can, consistent with his current resources. "Toiling" was the word used in one motion, *see* docket # 1473 at 2, and that word seems accurate. The problem is that there are 30 defendants, 30 defense lawyers, and one prosecutor. (A second prosecutor is going on leave soon. A third part-time attorney is assigned to the case from the Department of Justice's Gang Unit in Washington, D.C.) The district court's case management orders show that the prosecution has missed disclosure deadlines, not out of malice, but out of overwork. While the district court has extended deadlines and generally has been tolerant (probably because of the hard work), still, the situation shows that the prosecutor has a lot on his plate.

Another problem is that while translation of recordings is the agency's responsibility pre-indictment, it is an expense assumed by the United States Attorney's Office post-indictment. When

1  cases are done by the FBI, it has cadres of interpreters, translators, and analysts in-house to assist
2  with tasks like those outlined in this order. The DEA has similar resources for large narcotics cases
3  that involve wiretaps or voluminous audio recordings. From the government's proffers, it seems
4  likely that ICE has not been able to dedicate similar resources. This slows down production of
5  transcripts, which risks costs to the taxpayer from expenditure of CJA funds. It also must cause
6  considerable stress to the assigned prosecutor.

7  The government has resources, however. As to the FBI recordings, the U.S. Attorney's
8  Office could ask the FBI to organize and prepare rough transcripts of the recordings (if the Bureau
9  hasn't already). If they were important enough to intelligence that the FBI obtained them, then
10 presumably they are important enough to access them via transcripts. As to other recordings, the
11 government needs to dedicate enough resources – either within agencies or by contract transcribers –
12 to come up with a realistic time line about what it wants to do and by when. The government should
13 have no objection to using Haydee Claus's existing transcripts (and should be happy to have them
14 because right now, it has very few transcripts).

15 The referral to this Court was about a defense funding request. Addressing that issue
16 requires an assessment of what the government plans to do in order to avoid spending money
17 unnecessarily on defense requests. Also, the government and the defense have similar interests: they
18 want to know the contents of the recordings, and the only way to access them for non-Spanish
19 speakers is by transcript or a detailed index. Pooling resources and sharing information – in a way
20 consistent with the protective order – seems to be a win-win for all parties. Not cooperating on
21 matters of joint interest possibly is more problematic for the prosecution, which – toiling in the
22 context of 30 defense lawyers – risks incomplete or inferior access to its own discovery.

## II. FURTHER CASE MANAGEMENT CONFERENCE

24 To facilitate the possible coordination of tasks and a realistic time line for the trials, the
25 Court suggests a further case management conference with five or six defense lawyers, the
26 prosecution, and members from both teams responsible for organizing the recordings. From the
27 defense team, that might be Blair Perilman, and from the prosecution team, it might be a paralegal,
28 someone from Automated Litigation Support, or the agents coordinating the indexing. For the

AMENDED ORDER
RE MARCH 19 HEARING (CR 08-0739 WHA (LB))

reasons stated in the preceding section, the Court also is very concerned that the investigating agencies may not have dedicated enough agency support to the prosecution to accomplish everything by the April deadlines. The Court is confident that the assigned prosecutor is working incredibly hard but believes that a supervisor – like the criminal chief given the Strike Force chief's current trial commitments – ought to attend the case management conference. The line prosecutor really does not have the ability to leverage agency resources or ask for agency commitment in the way that a high-level supervisor can.

The Court wants to emphasize that its observations are descriptive and are not meant to exact extra discovery obligations from the government. What the Court wants to achieve is a workable index and meaningful production of transcripts with realistic and achievable time lines for both parties.

The Court will discuss further dates with the parties at the March 26 hearing.

**IT IS SO ORDERED.**

Dated: March 25, 2010

_____
LAUREL BEELER
United States Magistrate Judge