IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | |
| v. | **ORDER RE DEFENDANT CRUZ-RAMIREZ'S MOTIONS REGARDING THIRD SUPERCEDING INDICTMENT (DKT. NOS. 1177, 1178, 1180, 1182, 1186)** |
| JONATHAN CRUZ-RAMIREZ, *et al.* | |
| Defendants. / | |

**INTRODUCTION**

This RICO gang prosecution commenced in October 2008. The third superceding indictment was filed on September 24, 2009. It alleged 60 counts against 29 defendants arising from alleged actions of the MS-13 gang. Six of defendants — including defendants Luis Herrera, Walter Chinchilla-Linar, Guillermo Herrera, Erick Lopez, Jonathan Cruz-Ramirez and Cesar Alvarado are eligible for the death penalty, although the government has not yet filed a statutory notice of intent to seek the death penalty as to any of them. The government has a deadline to file notices of intent to seek the death penalty of September 15, 2010.

On March 15, 2010, a hearing was held on all motions by RICO and death eligible defendants directed at the third superceding indictment itself. This order addresses motions by defendant Jonathan Cruz-Ramirez to amend or dismiss from the third superceding indictment the alleged "gateway" and aggravating factors regarding his eligibility for the death penalty, to find that the Federal Death Penalty Act is unconstitutional, and for severance. This Court

previously addressed nearly identical motions in *United States v. Diaz*, No. CR 05-00167 WHA, and will refer to several orders from that action in the following analysis.

## ANALYSIS

### MOTIONS RE GATEWAY AND AGGRAVATING FACTORS

Under the Federal Death Penalty Act, if the government believes that the circumstances of an offense justify a death sentence, it must, within a "reasonable time" before trial, serve on the defendant a notice stating that death will be sought and "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." 18 U.S.C. 3593(a).

Before a death sentence may be imposed, the defendant must first be convicted of an offense for which death is a prescribed sentence. Upon conviction of such an offense, a separate sentencing hearing must be held. At that hearing, the government may present evidence in support of the aggravating factors for which it has given notice and the defendant may present evidence of mitigating factors. 18 U.S.C. 3593(b), (c).

To impose a death sentence at the conclusion of the hearing, the jury must make several determinations. *First*, the jury must unanimously and beyond a reasonable doubt find that the defendant had the requisite intent to commit the charged offense, as described in Section 3591(a)(2). These statutorily-enumerated mental states are often referred to as "gateway" factors because the sentencing jury must find that a defendant had at least one of these four mental states before it may consider whether to recommend a death sentence. In particular, Section 3591(a)(2) requires that a defendant either:

> (A) intentionally killed the victim;
>
> (B) intentionally inflicted bodily injury that resulted in the death of the victim;
>
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
>
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that

participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

*Second*, the jury must find, unanimously and beyond a reasonable doubt, that at least one of the sixteen statutory aggravating factors set forth in Section 3592(c)(1)–(16) also exists. 18 U.S.C. 3591(a)(2), (c). The defendant is considered eligible for the death penalty once the jury finds that (1) the defendant possessed the requisite mental state and (2) one of the statutory aggravating factors exists.

Finally, after finding a defendant to be death eligible, the jury makes its third and final determination — selection of the appropriate sentence for the defendant. For this stage, the government may present both the statutory aggravating factors and "any other factor for which notice has been given" ("non-statutory aggravating factors"). Any aggravating factors considered by the jury must be found by the jury unanimously and beyond a reasonable doubt. Also at this stage, the burden of establishing any mitigating factor falls on the defense. Any mitigating factor need only be found by a preponderance of the evidence and need not be found unanimously. Any single juror who finds that a mitigating factor exists may consider that factor regardless of whether the other jurors agree that the factor has been established. 18 U.S.C. 3593(c). The jury must then determine whether "all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. 3593(e). Finally, "[b]ased upon this consideration, the jury by unanimous vote . . . shall recommend whether the defendant should be sentenced to death, life imprisonment without possibility of release or some other lesser sentence." *Id.* The FDPA does not require the weighing of the aggravating and mitigating factors to be decided beyond a reasonable doubt.

The third superceding indictment charges defendant Cruz-Ramirez with four counts which he is eligible for the death penalty including Counts 10, 11, 13 and 14. These counts encompass two killings. Count 10 charges him with the murder in aid of racketeering of Juan Rodriguez. Count 11 charges him with use or possession of a firearm in furtherance of a crime of violence resulting in the murder of Juan Rodriguez. Count 13 charges him with the murder

3

in aid of racketeering of Armando Estrada. Count 14 charges him with use or possession of a firearm in furtherance of a crime of violence resulting in the murder of Armando Estrada.

The third superceding indictment alleges in a notice of special findings that defendant Cruz-Ramirez possessed *each* of the four gateway mental states described in Section 3591(a)(2) as to each of the four death-eligible counts against him. It also alleges statutory aggravating factors set forth in Section 3592(c). It specifically alleges that as to the killing of Armando Estrada, defendant Cruz-Ramirez "in the commission of the offense, or in escaping apprehension for the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense" in violation of Section 3592(c)(5). As to both the killings of Armando Estrada and Juan Rodriguez, it alleges that he "committed the offense after substantial planning and premeditation" in violation of Section 3592(c)(9).

Defendant Cruz-Ramirez moves to dismiss or strike from the notice of special findings the gateway mental state allegations (Dkt. No. 1178). He also moves to dismiss or strike the statutory aggravating factors (Dkt. No. 1180). He moves alternatively for amendment of the notice of special findings (Dkt. No. 1177).

Regarding the gateway mental state allegations, defendant Cruz-Ramirez argues it is improper for the indictment to allege all four mental states because (1) this denies him reasonable notice of the charges against which he must defend, (2) alleging more than one mental state may skew the jury's consideration of aggravating factors by encouraging them to assign weigh multiple mental states against mitigating factors, and (3) the indictment's recitation of the statutory language defining each of the mental states without further factual allegations and evidentiary detail is insufficient to provide adequate and required notice of the basis for the special findings.

It is not improper for the indictment to allege more than one mental state. As held in *United States v. Diaz*, No. 2007 U.S. Dist. LEXIS 18442 (N.D. Cal. Feb. 28, 2007) at *29–30, the four mental states in the FDPA are merely variations on the same theme. The jury may find that the evidence supports any one of the mental states. It would be unfair to force the government to restrict its theories before presentation of the evidence. Nor would alleging more

4

than one mental state risk skewing the jury's weighing of aggravating and mitigating factors. The mental state elements are not aggravating factors to be weighed against mitigating factors. Thus, "if the jury finds one or all four of the factors, there is no risk of skewing because the jury finds intent, and then starts with a clean slate in evaluating separate aggravating factors." *Id.* (quoting *United States v. Cooper*, 91 F. Supp. 2d 90, 109 (D.D.C. 2000). No further factual allegations or evidentiary detail regarding the gateway factors is required. Defendant Cruz-Ramirez's motion to dismiss or strike the gateway mental state allegations is **DENIED**, and his motion to amend the notice of special findings as to those gateway factors is also **DENIED**.

\*    \*    \*

Defendant Cruz-Ramirez argues that the aggravating statutory factors alleged against him are unconstitutionally vague and overbroad as alleged because they lack sufficient allegations to inform him of the facts that the government would attempt to establish during the penalty phase if it eventually seeks the death penalty against him. In light of these purported insufficiencies, he requests that the aggravating factors be stricken or, in the alternative, that the government be required to amend the special notice to provide an outline of evidence to support the aggravating factors.

In *Diaz,* this Court held that in its notice of intent to seek the death penalty, the government was required to provide greater specificity regarding the type of evidence it intended to introduce at the sentencing phase. *Diaz*, 2007 U.S. Dist. LEXIS 8137 at \*6–7. In particular, it required that the notice of intent to seek the death penalty lay out the factual details that the government intended to use to establish the aggravating factors at the penalty phase. *Id.* at \*10–11. With regards to the "substantial planning and premeditation" factor under Section 3592(c)(9), the government was required to provide an informative outline of the factual basis on which it intended to show that the planning and premeditation were substantial. With regards to the "grave risk of death" factor under Section 3592(c)(5), the government was required to provide an informative outline of the factual basis on which it intended to establish who was put at grave risk, what the grave risk was, or how the defendant knowingly created the risk. *Id.* at \*13–14.

5

1    By contrast, the government in the present action has not yet determined whether it will
2 seek the death penalty as to defendant Cruz-Ramirez (or any other defendant).  No notices of
3 intent to seek the death penalty have been filed.  Defendant Cruz-Ramirez cites no authority that
4 he is entitled to a more detailed notice of special findings in the indictment.  This order
5 therefore holds that the notice of special findings is sufficient at this early stage.  If the
6 government does file notices of intent later as to any of the death-eligible defendants, it should
7 be careful to provide informative outlines of the factual bases on which it intends to establish
8 each alleged aggravating factor.  Defendant Cruz-Ramirez's motions to dismiss, strike or amend
9 the aggravating factors are otherwise **DENIED** as premature, without prejudice to renewal later if
10 a notice of intent is filed.

**MOTION FOR FINDING THAT FDPA IS UNCONSTITUTIONAL**

12    Defendant Cruz-Ramirez moves for an order declaring that the Federal Death Penalty
13 Act is unconstitutional for a variety of reasons.  He admits, however, that the Ninth Circuit has
14 previously denied similar attacks on the FDPA in *United States v. Mitchell*, 502 F.3d 931 (9th
15 Cir. 2007).  Moreover, this Court has rejected nearly identical arguments in *United States v.
16 Diaz*, 2007 U.S. Dist. LEXIS 18442 (N.D. Cal. Feb. 28, 2007).  Defendant Cruz-Ramirez
17 nevertheless requests a re-examination of these issues.

18    *First*, defendant Cruz-Ramirez argues that the FDPA is facially unconstitutional because
19 it does not require that non-statutory aggravating factors be submitted to the grand jury and
20 charged in the indictment, does not require that the grand jury consider the weighing of
21 aggravating factors against mitigating factors, and does not require that the grand jury be
22 informed of the "implications" of its special findings.

23    This Court rejected these arguments in *Diaz*, 2007 U.S. Dist. LEXIS 18442 at *7–15.
24 As described in *Diaz*, non-statutory aggravating factors are not constitutionally required to be
25 submitted to the grand jury because, although relevant to determining whether a jury decides to
26 impose the death penalty, they do not increase punishment.  They are "neither sufficient nor
27 necessary under the FDPA for a sentence of death."  *United States v. Brown*, 441 F.3d 1330,
28 1368 (11th Cir. 2006).  The same principles apply to the weighing of aggravating and mitigating

6

factors, which is in the purview of the sentencing authority and need not be charged in the indictment. This order follows the weight of federal authority that the grand jury need not find that aggravating factors substantially outweigh mitigating factors for the same reasons addressed in *Diaz*.

Defendant cites no authority holding that the grand jury must be notified of the potential punishment stemming from its special findings. As held in *Diaz*, an indictment "need only charge the elements necessary to constitute the offense, and need not charge the ultimate punishment sought for the offense committed. Nor must the grand jury be informed of the potential punishment arising out of the special findings." *Diaz*, at *17–18. The role of the grand jury is simply to investigate possible crimes so that it can make a judgment whether a trial on specific charges is necessary. Considerations of punishment should not influence their decision.

*Second*, defendant Cruz-Ramirez argues that the relaxed standard for the admission of evidence under the FDPA is facially unconstitutional. The FDPA provides that during the penalty phase, "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. 3593(c). Defendant Cruz-Ramirez argues that this standard violates the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth Amendment. He relies on *Crawford v. Washington*, 541 U.S. 36 (2004), which held that where a conflict existed between Washington Rule of Evidence 804(b)(3) and the Confrontation Clause, the latter prevailed.

This argument was addressed and rejected in *Diaz*. "The lesson from *Crawford* that forecloses defendant's argument is that the Constitution includes its own set of evidentiary rules, and therefore does not rely on the Federal Rules of Evidence to make a particular proceeding constitutional. The fact that 18 U.S.C. § 3593(c) makes the Federal Rules of Evidence inapplicable during the sentencing phase of a capital case does not strip defendant of any constitutional protections." *Diaz*, at *21–22 (quoting *United States v. Cheever*, 423 F.Supp.

7

2d 1181, 1194 (D. Kan. 2006). The evidentiary standard of the FDPA does not render that act unconstitutional.

*Third*, defendant Cruz-Ramirez argues that the FDPA is unconstitutional because it does not explicitly provide for the government's practice of submitting to the grand jury consideration of mental state and statutory aggravating factors. Defendant relies on *United States v. Jackson*, 390 U.S. 570 (1968), in which the Supreme Court rejected the possibility that a court would "create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality." 390 U.S. at 580. A substantially identical argument was rejected in *Diaz*, at *15–16, and is rejected by this order for the same reasons.

*Fourth*, defendant Cruz-Ramirez argues that the application of the death penalty in this case would violate international treaties including the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment and the International Covenant on Civil and Political Rights. The argument that international law completely bars this nation's use of the death penalty-is unsupportable since the United States is not party to any treaty that prohibits capital punishment per se. With respect to the ICCPR, the United States expressly reserved its right upon ratification to charge criminal defendants with the death penalty. U.S. Senate Resolution of Advice and Consent to Ratification of the ICCPR, 138 Cong. Rec. 54781, 54783 (daily ed. Apr. 2, 1992). Furthermore, defendant concedes that the Ninth Circuit foreclosed the argument that the FDPA is violative of international law in *Alvarez-Mendez v. Stock*, 941 F.2d 956, 963 (9th Cir.1991) (finding that the court is "bound by a properly enacted statute, provided it be constitutional, even if that statute violates international law.")

For the foregoing reasons, defendant Cruz-Ramirez's motion for an order declaring that the Federal Death Penalty Act is unconstitutional is **DENIED**.

## MOTION FOR SEVERANCE

Finally, defendant Cruz-Ramirez moves for severance from all other defendants. This motion is premature until after the government has filed its intent to seek (or not) the death

penalty against the six death-eligible defendants. Defendants for whom the government eventually files a notice of intent to seek the death penalty will be tried in August 2011. Defendants against whom the government ultimately elects not to seek the death penalty will be tried with the other RICO defendants in September 2010 or January 2011. Accordingly, defendant Cruz-Ramirez's motion for severance is **DENIED WITHOUT PREJUDICE** to renewal after the government has decided whether to seek the death penalty as to each of the death-eligible defendants.

## CONCLUSION

For the foregoing reasons, defendant Cruz-Ramirez's motions to dismiss or strike the gateway mental state allegations, to dismiss or strike the aggravating factors, to amend the notice of special findings, to find the FDPA unconstitutional, and for severance are all **DENIED**.

**IT IS SO ORDERED.**

Dated: April 9, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9