IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IVAN CERNA, *et al.*,<br><br>Defendants.<br>_____ / | No. CR 08-00730 WHA<br><br>**ORDER DENYING MOTIONS TO STRIKE GOVERNMENT'S VICTIM LIAISON STATEMENT (DKT. NOS. 1590, 1610, 1614, 1615, 1618, 1619, 1620, 1623, 1627, 1642, 1643, 1644, 1646, 1649, 1650, 1651, AND 1652)** |

Defendants have filed numerous separate motions, responses, and requests to strike the government's statement regarding "victim liaisons" and for an order admonishing government counsel (Dkt. Nos. 1590, 1610, 1614, 1615, 1618, 1619, 1620, 1623, 1627, 1642, 1643, 1644, 1646, 1649, 1650, 1651, and 1652). Because these submissions ask for almost identical relief, they do not for the most part need to be addressed separately.

The government's statement in question was filed after the Court sought the views of both the defense and the government regarding the general issue of whether and under what guidelines a "victim liaison" should be allowed to approach victim witnesses whose family members have been killed and who themselves may be in danger of retaliation. Without revealing the specifics of any applications for CJA funding to pay for such "victim liaisons," the Court asked both sides to address generally whether the effect of such a liaison may be to influence the testimony of penalty-phase witnesses. Over vigorous defense objections, a previous order (Dkt. No. 1505) held that the government had a right to be heard before any such attempt to influence witness testimony took place, regardless of whether CJA funds were used.

1    In response to the Court's request, the government filed a written statement (Dkt. No.
2 1588) that opposed the appointment of a "victim liaison" in this matter.  The government stated
3 its concern that victim witnesses might be misled into believing that loyalty of the "victim
4 liaison" would lie with them when it would actually lie with defendants, "tricking" witnesses into
5 providing statements to someone to whom the witness would not otherwise speak.  It stated that
6 "[a] common tactic of defense investigators is to hide their affiliation with the defense in order to
7 gain access to a potential witness who would not otherwise consent to speak with the
8 investigator" (Govt. Br. at 2).

9    In addition, the government stated its concern that a "victim liaison" might seek to
10 improperly lobby or persuade a witness to adopt a particular point of view or testify in a particular
11 way (*ibid.*).  The government stated, "[T]he 'victim liaison' must not be another Kathleen
12 Culhane: he or she must not seek to persuade or alter the testimony or view of any potential
13 witness" (*id.* at 3).  A news article attached as an exhibit to the government's statement explained
14 that Kathleen Culhane was a private investigator who admitted to forging documents to try to stop
15 the executions of four death row inmates (Govt. Br., Exh. 1).

16    All of defendants' submissions assert that the government has accused them of improper
17 or unethical conduct.  While the government vigorously opposed the appointment of a "victim
18 liaison," a fair reading of its statement does not malign particular defense counsel or defense
19 investigators in this matter or suggest that they have acted unethically or improperly.  It does
20 not suggest that defense counsel have behaved like Kathleen Culhane, but merely expresses
21 concern that proper rules of conduct and guidelines should be adopted to ensure that a victim
22 liaison, if appointed, does not behave improperly.

23    The most troubling sentence in the government's statement is its assertion that a "common
24 tactic" of defense investigators is to hide their affiliation when approaching witnesses.  The
25 government does not offer any support for this, nor does it elaborate on what it means by
26 "common."  It would be improper and inaccurate for the government to suggest that defense
27 counsel or investigators "in general act in underhanded and unethical ways."  *United States v.*
28 *Frederick,* 78 F.3d 1370, 1379 (9th Cir. 1996).  The government should take care not do so.

2

Nevertheless, this order will take the government at its word that it did not mean to make such a suggestion. The defense motions to strike the government's statement and to admonish the government are therefore **DENIED**. All noticed hearings on these motions are **VACATED**.

In his response to the government's statement (Dkt. No. 1615), defendant Guillermo Herrera additionally requests an evidentiary hearing to determine whether false or unreliable information was proffered to the Court in the government's *ex parte* submissions in support of the protective order in this matter. This request is **DENIED**. For the reasons stated in numerous previous orders (Dkt. Nos. 631, 806, 853, 1092, 1624), the Court stands by the existing protective order as a fair and reasonable accommodation of defense counsel's legitimate interest in receiving early unredacted discovery as soon as practicable, and that the government's legitimate interest in protecting witnesses, especially given the disclosures the government will eventually have to make under other scheduling orders herein. The Court encourages all counsel to review the final protective order and submit a revised draft that would in their view appropriately balance these two interests.

**IT IS SO ORDERED.**

Dated: April 23, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

3