1

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7

8                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,                    No. CR 08-0730 WHA

11            Plaintiff,                          **ORDER DENYING**
                                                  **MOTIONS TO EXCLUDE**
12     v.                                         **FIREARMS-RELATED**
                                                  **EXPERT TESTIMONY AND**
13   IVAN CERNA, *et al*.                         **LATENT FINGERPRINT ID**
                                                  **EXPERT TESTIMONY**
14            Defendants.                         **WITHOUT PREJUDICE TO**
                                                  **FURTHER PROCEEDINGS**
15   _____/

16                               **INTRODUCTION**

17            In this RICO/VICAR gang prosecution, defendants have filed a number of motions

18   seeking to exclude expert testimony regarding latent fingerprint identification and firearm and

19   toolmark identification.  In the alternative, the motions request a pretrial *Daubert* evidentiary

20   hearing.  Specifically, defendant Luis Herrera moves to exclude expert testimony by Joanne Del

21   Bene regarding latent fingerprint identification on the ground that the ACE-V method in general

22   is unreliable under FRE 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

23   (1993) ("*Daubert*") (Dkt. No. 1851).  Defendant Jonathan Cruz-Ramirez moves to exclude

24   firearms-related expert testimony by firearm and toolmark identification experts John Sanchez,

25   Mark Proia, and G. Andrew Smith (Dkt. No. 1837).  Defendant Erick Lopez similarly moves to

26   exclude firearms-related expert testimony from Mr. Proia (Dkt. No. 1853).  Defendants seek to

27   exclude the firearms-related expert testimony on the basis that the Association of Firearm and

28   Toolmark Examiners theory of identification ("AFTE theory") is generally unreliable under

**United States District Court**
For the Northern District of California

*Daubert* and FRE 702.

        In addition, defendant Luis Herrera moves to exclude the firearms-related testimony and latent fingerprint identification testimony on the basis that the expert disclosures were inadequate to determine whether the experts reliably applied the AFTE theory and the ACE-V method (Dkt. No. 1850). Notably, defendants allege that they were not informed that Ms. Del Bene employed the ACE-V method until the government filed its opposition to the instant motions (Herrera Reply Br. 2).

        For the reasons that follow below, defendants' generalized challenges are **DENIED**. This order finds that the AFTE theory and the ACE-V method, if properly applied, are sufficiently reliable under *Daubert*. At this juncture, the government's firearms and fingerprint experts will not be excluded simply because they used the AFTE theory and the ACE-V method. There is no need for a pretrial *Daubert* hearing on the reliability of either. Instead, the government will be responsible for presenting a foundation for the reliability of the AFTE theory and the ACE-V method during its case-in-chief at trial.

        Defendants, however, do not have adequate documentation of the exact procedures used by the firearms experts in applying the AFTE theory. Similarly, defendants only recently received documentation of how Ms. Del Bene applied the ACE-V method to generate her conclusions. Accordingly, defendants will be afforded another opportunity to file additional motions challenging the experts and their specific application of the AFTE theory and the ACE-V method. Even so, barring a serious pretrial challenge, the reliability of the AFTE theory as applied and the ACE-V method as applied will be addressed during witness *voir dire* at trial. On direct examination, the government will be required to show the reliability of the AFTE theory and the ACE-V method, as well as the reliability of the way those methods were applied here. The defense will be allowed to *voir dire* the witnesses to test the reliability of the methods and the applications. These proceedings will be in the presence of the jury since the same evidence will go to the weight and reliability of the opinions, subject to striking if the *Daubert* foundation is not established.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**STATEMENT**

**1.    FIREARMS-RELATED TESTIMONY.**

In its FRCrP 16(a)(1)(G) expert disclosures to defendants, the government identified three firearm and toolmark identification experts that it may call at trial — John Sanchez, Mark Proia, and G. Andrew Smith.  All three of these experts are criminalists employed by the San Francisco Police Department.  Mr. Smith also performs contract work for the San Mateo County Sheriff's Office.

According to the government's expert disclosures, Mr. Proia examined a .380-caliber handgun recovered from the home of defendant Marvin Carcamo, a .45-caliber handgun recovered from defendant Erick Lopez, and a .380-caliber handgun recovered from a vehicle driven by defendant Luis Herrera (EXPERT000248).  Mr. Proia also examined "rounds/casings" recovered from the scenes of the David Pollack, Ernad Joldic, Phillip Ng, and Moises Frias homicides (*ibid.*).  Mr. Proia will testify that the handguns recovered from defendants Erick Lopez, Marvin Carcamo, and Luis Herrera were discharged in connection with the aforementioned homicides, as well as the wounding of other victims (*ibid.*).

According to the government's expert disclosures, Mr. Sanchez examined a 9 x 18 mm Makarov handgun recovered from defendant Jonathan Cruz-Ramirez, as well as several .380-caliber casings and bullets recovered from the scene of the Juan Rodriguez homicide and from the scene of a shooting not charged in this case (EXPERT000263).  Mr. Sanchez will testify that several .380-caliber casings and bullets recovered from the scene of the Rodriguez homicide were from the same gun (*ibid.*).  He will also testify that the gun that was used in the Rodriguez homicide was used in a separate homicide that is not charged in this case (*ibid.*).

According to the government's expert disclosures, Mr. Smith examined a .22-caliber handgun recovered on the same day that a .22-caliber bullet was recovered from the scene of a shooting in South San Francisco (EXPERT000270).  Mr. Smith will testify that the .22-caliber handgun fired the .22-caliber bullet recovered from the scene of the South San Francisco shooting (*ibid.*).  Mr. Smith also examined 9mm and .380-caliber casings recovered from the scene of the Moises Frias homicide (*ibid.*).  Mr. Smith will testify that the "9mm rounds were

3

fired from the same weapon while the .380-caliber rounds were fired from the same weapon" (*ibid.*).  Finally, Mr. Smith examined and test-fired a 9mm handgun recovered on October 28, 2009, and compared the bullets and casings recovered from the scene of the Frias homicide (*ibid.*).  Mr. Smith will testify that the recovered 9mm handgun was one of the weapons discharged at the scene of the homicide (*ibid.*).

Although the government's expert disclosures did not specify that Mr. Smith, Mr. Proia, and Mr. Sanchez used the AFTE theory or an AFTE-approved method, the government specified in its opposition that the experts did in fact use methods approved by AFTE (Opp. 5).  After the August 4 hearing, an order requested that the government file declarations from Mr. Smith, Mr. Proia, and Mr. Sanchez confirming, if true, this unsworn statement (Dkt. No. 2055).  The government filed declarations from Mr. Proia and Mr. Sanchez on August 13, 2010, and a declaration from Mr. Smith on August 18, 2010 (Dkt. No. 2095, 2096, 2143).  These declarations stated that the experts employed the standard operating procedures of the SFPD crime lab and the San Mateo County forensic lab, which are consistent with AFTE approved methods (*ibid.*).  At the undersigned's request, the experts filed additional declarations on August 23, 2010, further clarifying the procedures used in their analyses.  In these declarations, the experts specified that the AFTE procedures manual serves as the "backbone and template" for the policy and procedure manuals utilized by the SFPD crime lab and the San Mateo County forensic lab (Dkt. Nos. 2157, 2158).  The declarations further specified that the manuals do not contradict or include procedures that are new, novel, or not addressed by the AFTE manual (*ibid.*).

   **2.    LATENT FINGERPRINT IDENTIFICATION TESTIMONY.**

The government's FRCrP 16(a)(1)(G) expert disclosure identified Ms. Del Bene as an expert in latent fingerprint identification.  Ms. Del Bene is now retired but was a forensic specialist employed by the San Mateo Sheriff's Office when she performed her examination of the fingerprints at issue (Dkt. No. 2094).

According to the government's expert disclosure, Ms. Del Bene swabbed a .22-caliber firearm for DNA samples and examined latent fingerprints found in a stolen Honda recovered on

United States District Court
For the Northern District of California

1   February 20, 2009 (EXPERT000053).  Ms. Del Bene will testify to her conclusion that latent

2   fingerprints left on two items in the stolen Honda were "made by the person whose fingerprints

3   appear on the copy of the fingerprint record bearing the name Luis E [sic] Herrera" (*ibid*.).

4       Although the government's expert disclosure did not specify that Ms. Del Bene used the

5   ACE-V method, the government specified in its opposition that Ms. Del Bene did in fact use the

6   ACE-V method (Opp. 9).  After the August 4 hearing, an order requested the government file a

7   declaration from Ms. Del Bene confirming, if true, the government's unsworn statement that Ms.

8   Del Bene used the ACE-V method (Dkt. No. 2055).  The order also specified that the declaration

9   must state whether Ms. Del Bene used any variations of the ACE-V method or deviated from the

10  ACE-V method (*ibid*.).  The government filed a declaration from Ms. Del Bene on August 13,

11  2010 (Dkt. No. 2094).  The declaration confirmed that Ms. Del Bene employed the ACE-V

12  method and did not deviate from it while analyzing and comparing the fingerprints in question

13  (*ibid*.).

14      At the August 4 hearing, the government represented that additional documents,

15  including bench notes, were sent to defense counsel on July 28, 2010, and that the government

16  produced everything it had received.  After the hearing, defense counsel confirmed that the

17  defense received these additional disclosures on August 4 (Dkt. No. 2164 at 2).

18      On August 18, 2010, the undersigned requested additional briefing from the parties

19  regarding the record required for making a *Daubert* reliability determination regarding the

20  fingerprint and firearms experts (Dkt. No. 2148).  The procedure to be followed below will, in

21  the Court's judgment, satisfy those requirements.

22                  **ANALYSIS**

23      Defendants move for exclusion of the firearms-related expert testimony and latent

24  fingerprint identification testimony on two general grounds: (1) the AFTE theory and the ACE-V

25  method are unreliable; and (2) the government's expert disclosures are so inadequate defendants

26  cannot make fact-specific challenges to the experts' specific application of the AFTE theory or

27  the ACE-V method.

28

**United States District Court**
For the Northern District of California

1    **1.    RELIABILITY OF THE AFTE THEORY IN GENERAL.**

2    The AFTE theory in general is sufficiently reliable under *Daubert* and FRE 702.  In

3    February 2007, the undersigned ruled that the AFTE theory, as applied by the SFPD crime lab, is

4    sufficiently reliable under *Daubert*.  *United States v. Diaz*, No. 05-0167, 2007 WL 485967 (N.D.

5    Cal. Feb. 12, 2007).  No new developments since the *Diaz* ruling cast sufficient doubt on the

6    reliability of the AFTE theory such that expert testimony must be kept from the jury simply

7    because it is based on the AFTE theory.

8    The *Diaz* order followed a four-day *Daubert* hearing and an exhaustive review of

9    applicable literature (*ibid.*).  The *Diaz* order concluded that although firearm and toolmark

10   identification involves some subjective judgment in discerning the extent of matching patterns,

11   there is a method and science behind firearm and toolmark identification (*id*. at *1, 13).  The

12   *Diaz* order analyzed the AFTE theory under all five *Daubert* factors and found the AFTE theory

13   is testable, has been subject to peer review and publication, and has been generally accepted by

14   the firearms community (*id*. at *6–8, 11).  The *Diaz* order also found that although the AFTE

15   theory itself does not have a specific protocol, there are sufficient standards to control the

16   analysis of firearms under the AFTE theory — such as those employed by the SFPD crime lab

17   (*id*. at *8–9).  Additionally, although the *Diaz* order found that the AFTE theory does not have

18   one true error rate, it found it was reasonable to infer that error rates among trained examiners

19   were low and uncertainty regarding error rates did not bar admitting firearms-related testimony

20   (*id*. at *9).  Accordingly, the *Diaz* order found the AFTE theory, as applied by the SFPD crime

21   lab, passed *Daubert* muster (*id*. at *14).  The *Diaz* order, however, only allowed the experts to

22   testify that a particular bullet or cartridge case was fired from a particular firearm "to a

23   reasonable degree of certainty in the ballistics field," rather than "to the exclusion of all other

24   firearms in the world" (*ibid.*).

25   Defense counsel are well aware of the *Diaz* ruling, as a number of counsel in the instant

26   case also served as defense counsel in *Diaz*.  Thus, defendants argue that *new developments*

27   since the *Diaz* ruling require the undersigned to revisit whether firearm and toolmark

28   identification is sufficiently reliable under *Daubert* (Cruz-Ramirez Br. 3).  Developments

subsequent to the *Diaz* ruling, however, have not undermined the reliability of the AFTE theory such that the government's firearms experts must be excluded at trial purely on the basis that they relied on the AFTE theory.  The AFTE theory remains sufficiently reliable to the extent that the testifying expert qualifies any "match" to be "to a reasonable degree of certainty in the ballistics field."

A 2009 report from the National Research Council of the National Academy of Sciences highlights weaknesses in the AFTE theory.  *See* National Research Council, Committee on Identifying the Needs of the Forensic Sciences Community, *Strengthening Forensic Science in the United States: A Path Forward* (2009) ("NAS report").  These weaknesses, however, do not require the automatic exclusion of any expert testimony based on the AFTE theory.  The weaknesses highlighted by the NAS report — subjectivity in a firearm examiner's identification of a "match" and the absence of a precise protocol — are concerns that speak more to an individual expert's specific procedures or application of the AFTE theory, rather than the universal reliability of the theory itself.  Indeed, the NAS report notes that although the "process for toolmark and firearms comparisons lacks the specificity of the protocols for, say, 13 STR DNA analysis . . .[t]his is not to say that toolmark analysis needs to be as objective as DNA analysis in order to provide value" (*id*. at 155).  Moreover, the general issues raised in the NAS report were grappled with in the *Diaz* order — the order addressed criticism that the AFTE theory involves subjectivity, the standards controlling the analysis of firearms identification can be construed as vague, and there is no single, precise error rate.  *Diaz*, 2007 WL 485967, at *1, 9–10.

Notably, the co-chair of the committee that issued the NAS report, Judge Harry T. Edwards, has specifically noted that the NAS report is *not* a law reform proposal and that "whether forensic evidence in a particular case is admissible under applicable law *is not coterminous* with the question whether there are studies confirming the scientific validity and reliability of a forensic science discipline."  *The Need to Strengthen Forensic Science in the United States: The National Academy of Science's Report on the Path Forward*: *Hearing Before the S. Comm. on the Judiciary*, 111th Cong. 10 (2009) (statement of Judge Harry T. Edwards,

United States District Court
For the Northern District of California

7

Co-Chair, Committee on Identifying the Needs of the Forensic Science Community) (emphasis added).   True, the NAS report has been cited by the Supreme Court.   *See Melendez-Diaz v. Massachusetts*, __ U.S. __; 129 S. Ct. 2527, 2536 (2009).   The NAS report was cited, however, for the proposition that forensic evidence in general is manipulable (*ibid.*).   This does not undermine the proposition that the AFTE theory is sufficiently reliable to at least be presented to a jury, subject to cross-examination.   Accordingly, the NAS report does not necessitate exclusion of expert testimony simply because an expert employed the AFTE theory.   Instead, the NAS report may be used for cross-examination or may offer guidance for fact-specific challenges. The AFTE theory need not be perfect science to satisfy *Daubert* so long as it is sufficiently reliable.

*United States v. Glynn*, 578 F. Supp. 2d 567 (S.D.N.Y. 2008), is not persuasive.   *Glynn* criticized the existence of subjectivity in firearm and toolmark analysis, but ultimately did not exclude firearms-related testimony (*id*. at 575).   Instead, the court only permitted the expert to state that a bullet or shell casing "more likely than not" came from a particular firearm (*ibid.*). This standard is not appropriate as it suggests that the expert is no more than 51% sure that there was a "match."   Likewise, the proposed "practical certainty" standard, as articulated at the hearing, is not preferable to the *Diaz* "reasonable degree of certainty in the ballistics field" standard.

Instead, the standard previously used in *Diaz* — that a bullet or casing came from a particular firearm to a "reasonable degree of certainty in the ballistics field" — will be used in this case.   Defendants may cross-examine the government's experts, or present their own experts, regarding the significance of "certainty in the ballistics field" and how much confidence a juror should have in the ballistics field.   No counsel or witness will be permitted to assert to the jury that the undersigned judge has somehow vouched for the AFTE theory, at least without previously obtaining court approval.

Defendants also argue that the reliability of the AFTE theory is called into even greater question when the "suspect" firearm is never retrieved, as in the case of defendant Cruz-

United States District Court

For the Northern District of California

1    Ramirez.  The validity of the AFTE theory does not require having the suspect weapon.[1]

2    Although having the suspect weapon is better, if the suspect weapon is not recovered, the expert

3    may still be able to reliably compare markings on different bullets or casings and determine

4    whether these markings indicate bullets or casings were shot from the same weapon.  The expert

5    may therefore be able to identify the type of firearm, firearm manufacturer, or even particular

6    batch of firearms, that the bullets or casings came from.  Any challenges would thus go to the

7    weight of the evidence, the factual bases for the expert's opinions, or the way in which the

8    theory was applied to the evidence.

9         Finally, defendants point to recent scandals involving the SFPD crime lab (*see, e.g.*,

10   Lopez Br. 4).  The government, however, made assurances at the hearing that these recent

11   scandals did not involve the firearms section of the SFPD crime lab.  Additionally, any such

12   evidence would speak not to the AFTE theory's reliability in general, but to whether the experts

13   applied the AFTE theory reliably.

14        No pretrial evidentiary hearing regarding the AFTE theory in general is needed at this

15   time.  Yes, the trial court serves as a gatekeeper, but this gatekeeping role is "not intended to

16   serve as a replacement for the adversary system."  Fed. R. Evid. 702, Advisory Committee's

17   Note.  Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful

18   instruction on the burden of proof are the traditional and appropriate means of attacking shaky

19   but admissible evidence."  *Daubert*, 509 U.S. at 595 (citation omitted).  Of course, there is a

20   benefit for counsel to have a "free shot" at the firearms experts prior to their testimony before the

21   jury.  Nonetheless, this is not the normal procedure used in criminal cases.  Cross-examinations

22   in criminal cases are almost always cold-cross examinations.

23        The Court raised the issue of what record would be adequate for the court of appeals to

24   sustain the government's view that the AFTE theory satisfies *Daubert*.  The government's

25   response was that an adequate record already exists to make a pretrial finding that the AFTE

26   theory is reliable, but in any event, the government anticipates it will present an "adequate basis

27

28        [1] Although defendants pointed to *United States v. Taylor*, 663 F. Supp. 2d 1170 (D.N.M. 2009), during the hearing and in their reply brief, the *Taylor* decision does not opine on the admissibility of firearms-related expert testimony when the suspect firearm is not recovered.

of information while qualifying its experts to allow the Court to make the necessary gatekeeping decisions" (Dkt. No. 2161 at 4).  Thus, as part of its case-in-chief, the government will present foundational evidence regarding the reliability of the AFTE theory and will further develop the record.  Based upon this representation, the government may proceed as it proposes — but the government must be mindful that it must lay before the jury, and the Court, the evidence needed to show that the AFTE theory passes *Daubert* muster.  The firearms experts must explain at trial why and how the AFTE theory comports with the *Daubert* reliability requirement.  It will not be enough for the firearms experts to simply opine that the AFTE theory is widely accepted.  If the government fails to make the required threshold showing, the jury will be instructed to disregard the expert testimony.  In the meantime, the plethora of court decisions across the country, of which this order take judicial notice, are instructive in making a preliminary determination that the AFTE theory is reliable.  This finding is subject to revision if the government fails to follow through with its representation that it will make the necessary showing.

**2.      RELIABILITY OF THE ACE-V METHOD IN GENERAL.**

This order finds that the ACE-V method, if properly applied, is sufficiently reliable under *Daubert*.  Simplifying matters, the government and defendants agree that latent fingerprint identification has been widely accepted by courts as satisfying *Daubert* and FRE 702 (Br. 2; Opp. 8–9).  Indeed, the ACE-V method specifically has undergone *Daubert* analysis by a number of courts and has been repeatedly upheld as sufficiently reliable.  *See, e.g.*, *United States v. Pena*, 586 F.3d 105, 110–111 (1st Cir. 2009); *United States v. Baines*, 573 F.3d 979, 989–992 (10th Cir. 2009); *United States v. Mitchell*, 365 F.3d 215, 235–241 (3d Cir. 2004).  A pretrial evidentiary hearing to re-plough ground already canvassed time and again is unnecessary, although the government will be required to introduce reliability evidence at trial, as it has committed to do.

Despite the widespread conclusion that the ACE-V method is sufficiently reliable under *Daubert* and FRE 702, defendants contend that it is time for a sea-change.  In support of this contention, defendants proffer law review articles and judicial dissents to argue that the ACE-V method is not a scientific method that is: (1) empirically tested through rigorous scientific

United States District Court

For the Northern District of California

1   experimentation; (2) subject to exhaustively refined standards controlling its operation; (3)

2   subject to a fixed error rate; (4) generally accepted within the scientific community; and (5) peer-

3   reviewed and published in academic scientific journals.

4          A method, however, need not be perfect science, nor satisfy all of the factors articulated

5   in *Daubert*.  A close review of findings by courts that have held the ACE-V method reliable

6   under *Daubert* and FRE 702 shows that while the ACE-V method does not satisfy all of the

7   *Daubert* factors with flying colors (although it is not required to), the method itself is reliable

8   enough that if properly applied, testimony based on the method would be probative enough for a

9   jury to consider.

10          Although the NAS report points out weaknesses in the ACE-V method, these weaknesses

11   do not automatically render the ACE-V theory unreliable under *Daubert*.  Instead, the

12   weaknesses highlighted by the NAS report — the lack of specificity of the ACE-V framework

13   and its vulnerability to bias — speak more to an individual expert's application of the ACE-V

14   method, rather than the universal reliability of the method.  Moreover, the issues raised in the

15   NAS report are not new.  For example, the concern that the ACE-V method involves subjective

16   judgment and does not have a stringent framework has previously been analyzed at length.  *See*

17   *Mitchell*, 365 F.3d at 235–241 (concluding the ACE-V method is reliable after analyzing it under

18   each of the *Daubert* factors).  Further, as previously noted, the NAS report is *not* a law reform

19   proposal and its findings are not coterminous with whether forensic evidence in a particular case

20   is admissible.  Thus, while the NAS report may be fodder for cross-examination regarding the

21   reliability of the ACE-V method in general, or may enlighten fact-specific challenges to

22   particular applications of the method, it does not make a case for excluding testimony simply

23   because it is based on the ACE-V method.

24          Defendants challenge the degree of certainty that can be associated with the ACE-V

25   method.  For the same reasons that the firearms experts are limited to stating their conclusions

26   are to a "reasonable degree of certainty in the ballistics field," Ms. Del Bene will be limited to

27   stating that her conclusions are to a "reasonable degree of certainty in the latent print

28   examination field."  Ms. Del Bene will not be allowed to testify that her finding of a match is to

11

the exclusion of all other people in the world.  If the government objects to this limitation, it

must notify the undersigned by **SEPTEMBER 17, 2010**, in which case the government will be

given an opportunity prior to trial to prove a stronger degree of certainty should be submitted to

the jury.

For the aforementioned reasons, a pretrial *Daubert* hearing on the ACE-V method in

general is unwarranted.  Nonetheless, as discussed above, the government still must present the

necessary foundational evidence at trial as part of its case-in-chief to ensure an adequate record

regarding the reliability of the ACE-V method.  Ms. Del Bene must explain at trial why and how

the ACE-V method is reliable under the *Daubert* factors.  It will not be enough for Ms. Del Bene

to state that the ACE-V method is widely accepted.  If the government fails to make an adequate

threshold showing regarding the ACE-V method, this order's preliminary finding that the ACE-

V method is reliable may be revisited.

### 3.       THE AFTE THEORY AND THE ACE-V METHOD AS APPLIED.

As neither the latent fingerprint identification testimony nor the firearms-related

testimony will be excluded based on the reliability of the AFTE theory or the ACE-V method in

general, the only remaining questions are: (1) whether the experts' conclusions are based upon

sufficient facts or data; and (2) whether the AFTE theory or the ACE-V method, as applied by

the experts in this case, were sufficiently reliable. Fed. R. Evid. 702.  Defendants, however,

either do not have, or only recently received, the foundational materials required to adequately

challenge the experts on these bases.  Specifically, prior to the August 4 hearing, defendants had

not received worksheets, file notes, bench notes, standard operating procedures, and other

materials that document how each expert applied the AFTE theory or the ACE-V method to the

evidence.

At the hearing, the government represented that standard operating procedures followed

by the firearms-experts were sent to defendants on July 22, 2010, that the government had

requested the SFPD crime lab provide it with all remaining notes from the experts, and that the

government had produced everything it had received.  The government also stated that it sent

defendants additional disclosures for Ms. Del Bene's testimony on July 28, 2010.  Additionally,

at the hearing, the government promised to obtain and turn over reviewer notes and other materials to allow defendants to determine whether the AFTE theory and the ACE-V method were reliably applied to sufficient facts.  Cooperation between the government and defendants to resolve this matter is best, and AUSA Frentzen has given his word to do so.  If, however, the government fails to turn over any additional necessary materials, defendants are free to subpoena these materials from the appropriate agency and may do so before trial.

If review of the recently obtained materials and any additional materials raises issues of such magnitude that there is a serious challenge to the bases of an expert's opinions or the expert's particular application of the AFTE theory or the ACE-V method, the undersigned will hold a pretrial *Daubert* hearing, after proper motions are filed, on whether the testimony should be allowed at all.  But barring an issue of that magnitude being teed up by defense counsel before trial, fact-specific challenges to an expert's application of the AFTE theory or the ACE-V method will be left for *voir dire* of the expert at trial, in the presence of the jury.

A trial court need not make a reliability determination prior to trial to satisfy its gatekeeping duties under *Daubert*.  *See United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000).  During *voir dire* of the witness, the government will be required to show the reliability of AFTE theory or the ACE-V method, as applied by its experts, subject to cross-examination and defense expert testimony.  If it turns out on *voir dire* that defense counsel is able to sufficiently undermine the reliability of the firearms-related testimony, the jury will be told to disregard any such testimony, if any of it gets into evidence in the first place.  Such testimony is not so inflammatory that a jury would not be able to disregard it if so instructed.

Finally, defendants argue that an expert's testimony about the results of tests that the expert previously conducted constitutes testimonial hearsay and violates the accused's right to confrontation (Cruz-Ramirez Br. 16).  This argument is misplaced.  Defendants rely on cases wherein statements or conclusions made by out-of-court declarants not subject to cross-examination were presented during trial.  Here, the experts will be testifying in court regarding their own expert analyses and conclusions, and the experts will be subject to cross-examination.  Such statements do not constitute testimonial hearsay.

**United States District Court**
For the Northern District of California

1    **4.    "NEGATIVE" FINGERPRINT TESTIMONY.**

2    In its opposition, the government argues that "negative fingerprint" testimony —

3    testimony that fingerprints were unable to be obtained from certain surfaces — is non-expert

4    testimony that may be introduced through crime scene investigators or trained law enforcement

5    officers (Opp. 10).  Defendants reply that Ms. Del Bene should not be permitted to offer *expert*

6    opinion regarding negative fingerprint testimony because she has not been disclosed to offer

7    negative fingerprint testimony (Herrera Reply Br. 9).  Defendants, however, do not object to Ms.

8    Del Bene testifying about her own ability or inability to obtain fingerprints from evidence in this

9    case (*ibid.*).  Accordingly, it seems the government and defendants are in agreement and there is

10   no dispute on this issue.

11   **5.    JOINDERS.**

12   Defendants have filed a number of motions to join the motions discussed herein.

13   Defendants Cesar Alvarado, Aristedes Carcamo, Castillo, Cerna, Cruz-Ramirez, Cruz-Zavala,

14   Flores, Guevara, Hernandez, Herrera, Lopez, Maldonado, Portillo, and Quinteros move to join in

15   Luis Herrera's motion to exclude Ms. Del Bene's testimony (Dkt. No. 1851).  Defendants Cesar

16   Alvarado, Aristedes Carcamo, Castillo, Cerna, Chinchilla-Linar, Cruz-Zavala, Flores, Franco,

17   Guevara, Hernandez, Guillermo Herrera, Luis Herrera, Maldonado, Portillo, Quinteros, and

18   Velasquez move to join in Mr. Cruz Ramirez's motion to exclude firearms-related expert

19   testimony (Dkt. No. 1837).  Defendants Cesar Alvarado, Aristedes Carcamo, Castillo,

20   Chinchilla-Linar, Cruz-Ramirez, Cruz-Zavala, Flores, Guevara, Luis Herrera, Portillo, and

21   Quinteros move to join in Mr. Lopez's motion to exclude Mr. Proia's firearms-related testimony

22   (Dkt. No. 1853).  Defendants Cesar Alvarado, Aristedes Carcamo, Castillo, Cerna, Chinchilla-

23   Linar, Cruz-Ramirez, Cruz-Zavala, Flores, Franco, Guevara, Hernandez, Guillermo Herrera,

24   Lopez, Maldonado, Portillo, and Quinteros move to join in Luis Herrera's motion to exclude

25   government experts (Dkt. No. 1850).  These joinder motions are **GRANTED**.

26   //

27   //

28   //

**United States District Court**
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, defendants' motions to exclude the government's firearms and latent fingerprint identification experts are **DENIED** without prejudice to further proceedings. The AFTE theory and the ACE-V method, if properly applied, are sufficiently reliable under *Daubert*. At this juncture, the government's firearms and fingerprint experts will not be excluded simply because they used the AFTE theory and the ACE-V method. As stated herein, however, as part of its case-in-chief at trial, the government must present foundational evidence that the AFTE theory and the ACE-V method are reliable. If the government fails to make this required threshold showing, the jury will be instructed to disregard the expert testimony.

This order does not rule on AFTE theory or the ACE-V method as specifically applied in the instant case. After reviewing additional records, defendants may submit motions, if warranted, to exclude the testimony of Ms. Del Bene, Mr. Proia, Mr. Smith, or Mr. Sanchez on the basis that he or she: (1) did not rely on sufficient facts or data in coming to his or her conclusions; and/or (2) his or her particular application of the AFTE theory or the ACE-V method was unreliable.

The government has promised to diligently seek to provide defendants with the necessary foundational materials to determine whether the experts properly applied the AFTE theory or the ACE-V method to the evidence and what specific procedures were used. To this end, if the additional disclosures already provided to defense counsel are not sufficient, defense counsel shall, by **SEPTEMBER 17, 2010**, submit requests to the government, in writing, for the materials necessary to adequately determine whether the experts properly applied the AFTE theory or the ACE-V method and whether the experts based their conclusions on sufficient facts or data. The government must then produce the requested materials within 28 calendar days of any such request. If the government fails to provide defendants with the necessary information, defense counsel may then apply for subpoenas *duces tecum* to obtain the needed material from the appropriate agency. To limit the burden on the agency, however, all defendants who have joined the motion to exclude that particular expert's testimony should join in a single subpoena to the appropriate agency.

Additionally, if the government objects to Ms. Del Bene being limited to stating that her conclusions are to a "reasonable degree of certainty in the latent print examination field," it must notify the undersigned by **SEPTEMBER 17, 2010**.

**IT IS SO ORDERED.**

Dated:  September 1, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California

16