IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>LUIS HERRERA, *et al*.,<br><br>    Defendants.<br>_____/ | No. CR 08-0730 WHA<br><br>**ORDER DENYING GOVERNMENT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTION TO COMPEL UNREDACTED DISCOVERY** |

**INTRODUCTION**

The government moves for reconsideration of an October 29 order directing it to produce unredacted Daly City Police Department reports (Dkt. No. 2526). For the reasons stated herein, the motion for reconsideration is **DENIED**.

**STATEMENT**

On August 13, defendant Luis Herrera moved to compel unredacted versions of Daly City Police Department reports produced as S3000097 to S3000131, arguing that the redacted information was material to the preparation of his defense (Dkt. No. 2111). Each of the reports at issue were redacted almost in their entirety. As it had disavowed the FRCrP 16(a)(2) "work product" privilege for local and state law enforcement reports, the government did not invoke the privilege to justify the majority of the redactions (Dkt. Nos. 626, 692 at 17–18, 2341). Instead, the government claimed it only redacted Jencks Act statements and witness identifying information from the reports (Opp. 3). Defendant Herrera's motion did not challenge the

1 redactions on these grounds but argued that the government's redactions appeared to extend
2 beyond its claimed justifications (Reply Br. 2).

3      The motion was heard on September 13. At the hearing, the government was ordered to
4 produce the unredacted reports for *in camera* review so that the undersigned could determine
5 whether the redactions were limited to Jencks Act statements and witness identifying
6 information protected by the protective order in force at that time (Dkt. No. 2256).

7      *In camera* review of the records revealed eleven of the twelve reports at issue were
8 interview notes prepared by Daly City Police Department Detective Francis Mangan on July 31,
9 2009 — over three months after some of the interviews took place. Although the government's
10 *in camera* submission claimed that the interview notes were Jencks Act statements, there was no
11 indication that the interview notes were adopted or affirmed by the witness or that the reports
12 were substantially verbatim, contemporaneously recorded memorializations of the witness'
13 statements. Instead of being ordered to disclose the records at that time, however, the
14 government was given a further opportunity to submit declarations from the officers involved to
15 clarify whether any portion of the interview notes qualified as Jencks Act statements (Dkt. No.
16 2359). The government was also given an opportunity to designate additional witnesses whose
17 identities the government believed should be protected pursuant to the protective order in force
18 at the time.[1] Shortly thereafter, however, a new stipulated protective order was entered (Dkt. No.
19 2374). Under the new stipulated protective order, defense counsel was no longer restricted from
20 accessing to identities of protected government witnesses.

21      In response to the order requesting further information, the government submitted a
22 declaration from Detective Mangan (Dkt. No. 2433). After reviewing the Mangan declaration,
23 the undersigned determined that the government still had not demonstrated that the redacted
24 materials were Jencks Act statements and ordered the materials to be disclosed (Dkt. No. 2467).
25 Additionally, as the new stipulated protective order did not prevent protected witness identities

26

---

27    [1] The protective order in force at the time restricted defense counsel's access to the identities of certain
28 witnesses who the government demonstrated required protection (Dkt. Nos. 630, 631). Although the government asserted that the identities of the individuals named in the reports were not subject to disclosure under the protective order, none of the individuals were previously designated as protected witnesses.

1  from being revealed to defense counsel, the witness identities in the reports were also ordered to
2  be unredacted. The government was given a week to produce the records in compliance with the
3  order's specifications.
4  Less than 16 hours before the deadline for compliance with the order, the government
5  filed a motion for reconsideration (Dkt. No. 2526). No motion for leave to file the motion for
6  reconsideration had been submitted or granted prior to its submission. Shortly thereafter,
7  defense counsel filed an opposition to the motion for reconsideration (Dkt. No. 2528).

**ANALYSIS**

**1.   JENCKS ACT STATEMENTS.**

The instant motion fails to establish a valid basis for reconsideration of the order finding the reports at issue were not shown to be Jencks Act statements. Reconsideration is warranted when a motion for leave to file a motion for reconsideration specifically shows that: (1) a material difference of fact or law exists from what was previously presented and the party applying for reconsideration did not know of the difference of fact or law despite reasonable diligence; (2) since the original order, new material facts or law have emerged; or (3) there was a manifest failure by the district court to consider material facts or dispositive legal arguments which were presented to it.[2] Criminal L.R. 2-1; Civil L.R. 7-9. These requirements track case law regarding when reconsideration is appropriate. *See School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). The government's motion does not articulate any of these bases to warrant reconsideration.

To qualify as a witness statement under the Jencks Act, a statement must be a "written statement made by said witness and signed or otherwise adopted or approved by him," "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement," or a statement given to a grand

---

[2] Although the government did not file a motion for leave to file a motion for reconsideration, this procedural defect is overlooked in the instant motion to expedite a final resolution to the protracted proceedings regarding the redacted reports at issue.

jury. 18 U.S.C. 3500(e)(2); *United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009) (citation omitted).

Here, the interview notes themselves did not indicate that they were adopted or affirmed by the witness nor did they indicate they were substantially verbatim recitals of the witness' statements recorded contemporaneously with the making of the statements. The Mangan declaration similarly failed to demonstrate that the interview notes constituted Jencks Act statements. Although the Mangan declaration specified that the notes "memorialize[d]" Detective Mangan's interviews with the witness, it did not assert that all of the redacted notes were substantially verbatim recitations or transcriptions of the purportedly recorded statements (Mangan Decl. ¶ 3). Similarly, while the Mangan declaration specified that the notes "*contain[ed]* substantially verbatim recitations of the individual's interview statements," the declaration did not specify which portions of the notes were substantially verbatim recitations (*ibid.*, emphasis added). Instead, the Mangan declaration only established that the notes were based on Detective Mangan's "memory of the interviews as well as [his] subsequent review of the recordings [he] had made" (*ibid.*). Additionally, although the Mangan declaration stated that Detective Mangan recorded all of his interviews of the witness, the declaration did not offer an explanation for interviews it appears Detective Mangan did not participate in (*see* S3000097).

A paralegal type summary of an earlier recorded interview may convey a good review of what was said during the interview — it is nonetheless still a summary and not a substantially verbatim recitation of what was said; nor is it made at the time of the interview. Such summaries necessarily involve truncations, conclusions, editorial insertions, and omissions. As our court of appeals has repeatedly stated: "A government agent's rough notes will not be Jencks Act statements when they are not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigator's selections, interpretations, and interpolations." *Mincoff*, 574 F.3d at 1200 (citation omitted).

Although the government argues that the notes memorialize the interviews, memorialization is not enough — the notes must be *substantially verbatim* memorializations made contemporaneously with the interviews to qualify as Jencks Act statements. At best,

4

1  Detective Mangan later listened to a recording of the interviews and summarized statements
2  made during the interviews.[3]  Even though the notes are written in a "give and take" form that
3  usually appears in transcripts, it is clear that almost all of the notes are summaries or truncations
4  of what the witness and officers said rather than substantially verbatim transcriptions.  The usage
5  of qualifying phrases such as "talks of when," "spoke of," and "explains that" belie that
6  Detective Mangan was summarizing what was said during the interviews (*see, e.g.*, S3000111,
7  S3000130).  Similarly, the notes frequently shifted from first to third person, indicating they
8  were not a substantially verbatim transcription of what was said (*see, e.g.*, S3000109–110).
9  Moreover, many segments did not identify the speaker, rendering it difficult to discern who
10 made what statement.  Additionally, it is clear that Detective Mangan inserted his own thoughts
11 and comments into the notes.  In some instances, these additions were denoted with parenthesis
12 (*see, e.g.*, S000117).  In most instances, however, this sort of editorializing occurred without
13 special demarcation.

14 There are rare passages in the notes where Detective Mangan may have been quoting the
15 recording of the witness, but there is no confirmation in the sworn record that this was the case.
16 Moreover, if it is true that Detective Mangan was reciting substantially verbatim transcriptions in
17 these isolated instances, the government has not satisfied its burden to isolate these particular
18 parts for review.

19 The government has not presented any facts or law warranting reconsideration.  The
20 redacted information is material to the preparation of the defense and the government has not
21 articulated a basis for its continued redaction.  FRCrP 16(a)(1)(E).  The reports must be
22 disclosed, as originally ordered.

23 **2.     DISCLOSURE OF WITNESS' IDENTITY.**

24 The government also requests clarification regarding redaction of the subject witness'
25 identity.  As stated in the prior order, the stipulated protective order does not protect witness
26 identities from disclosure to defense counsel (Dkt. No. 2467 at 2).  Although the government
27 cites the updated *scheduling* order, the order does not address the disclosure of witness identities

---

[3] The Mangan declaration does not specify whether the tapes still exist or where they are located.

(Dkt. No. 2526 at 5).[4]  Instead, the updated scheduling order simply sets the latest deadline by which the government must disclose non-Jencks *Brady* material regarding government witnesses.  The provision does not bar the limited release of the identity at issue here.

**CONCLUSION**

For the reasons stated herein, the government's motion for reconsideration is **DENIED**. The government must comply with the October 29 order and produce the records in unredacted form, as described in that order (Dkt. No. 2467).

**IT IS SO ORDERED.**

Dated:  November 10, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[4] Notably, the government had not previously raised the scheduling order as a justification for redacting witness identities in the reports. Although the updated scheduling order currently in effect was entered after the government submitted its briefing on defendant Herrera's motion, the provision the government relies upon was included in the prior scheduling order (Dkt. No. 1921). Accordingly, the government could have — but failed — to raise this argument at the appropriate time.