United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>IVAN CERNA, *et al*.<br><br>　　　　Defendants. | No. CR 08-0730 WHA<br><br>**ORDER RE EMPANELMENT<br>OF ANONYMOUS JURY** |

## INTRODUCTION

The government has requested the empanelment of an anonymous jury and defendants Guillermo Herrera, Moris Flores, and Jonathan Cruz-Ramirez have moved to preclude the use of an anonymous jury or oppose the government's request for one (Dkt. Nos. 2654, 2879, 3099, 3192). The government's request is **GRANTED** and the defense motions to preclude an anonymous jury are **DENIED**.[1] The jurors' names, addresses, telephone numbers, birth dates, and social security numbers will not be disclosed to the public or to any of the parties. The proceedings to date and the government's additional submissions support the need for an anonymous jury for each defendant proceeding to trial on April 4.

As this order finds that an anonymous jury is warranted for each defendant proceeding to trial on April 4, there is no need to sever any defendants on the basis that an anonymous

---

[1] With the exception of defendant Marvin Carcamo, all remaining defendants proceeding to trial on April 4 move to join in the motions to preclude an anonymous jury. These joinder motions are **GRANTED**.

1  jury is not needed as to them. Accordingly, defendant Guillermo Herrera's motion for
2  severance from defendant Guevara is **DENIED** (Dkt. No. 3158).

**STATEMENT**

In this massive RICO/VICAR prosecution, eight defendants are proceeding to trial on April 4: defendants Marvin Carcamo, Jonathan Cruz-Ramirez, Walter Cruz-Zavala, Moris Flores, Angel Noel Guevara, Giovanni Hernandez, Guillermo Herrera, and Erick Lopez. All defendants proceeding to trial on April 4 are charged with racketeering conspiracy, conspiracy to commit murder in aid of racketeering, and conspiracy to commit assault with a dangerous weapon in aid of racketeering (Dkt. No. 658). Defendants Guevara, Flores, Hernandez, and Cruz-Zavala are additionally charged with use/possession of a firearm in furtherance of a crime of violence. Defendants Lopez, Cruz-Ramirez, and Guillermo Herrera are also charged with murder in aid of racketeering and use/possession of a firearm in furtherance of a crime of violence resulting in murder. Defendant Guevara is also charged with assault with a dangerous weapon in aid of racketeering.

The proceedings to date — including exhaustive gang-expert *Daubert* evidentiary hearings, evidentiary hearings on defense suppression motions, and hearings on the necessity of a protective order — have featured testimony and evidence depicting MS-13 as a criminal gang that routinely engages in threats and violence and have provided a plausible basis to believe that each of defendant proceeding to trial on April 4 was a MS-13 member or involved with MS-13 on some level. The government has also submitted supplemental sworn declarations from Assistant United States Attorney Wilson Leung and ICE Agent Benjamin Horton detailing post-arrest incidents involving interference with the judicial process and violence against perceived cooperators and authorities (Dkt. Nos. 3560, 3561).

**ANALYSIS**

An anonymous jury may be empaneled where there is a strong reason for concluding that it is necessary to enable the jury to perform its fact-finding function or to ensure juror protection. *United States v. Shyrock*, 342 F.3d 948, 971 (9th Cir. 2003). Factors that may be considered in determining whether an anonymous jury is necessary include, but are not

limited to: (1) the defendants' involvement with organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that the defendants will suffer lengthy incarceration if convicted; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment. Here, the record supports the need for empanelment of an anonymous jury.

*First*, it is undisputed that each of the remaining defendants face lengthy incarceration. Each defendant proceeding to trial on April 4 is eligible for a life sentence if convicted.

*Second*, the record supports a finding that the defendants were involved in organized crime (MS-13) and MS-13 has the capacity to harm jurors. The crux of the government's case is that the defendants were active members in a criminal street gang that committed numerous violent acts, including murder of non-gang-affiliated civilians. Although these allegations have not yet been tested by a jury, the proceedings to date and the government's additional submissions have provided enough foundation to believe that MS-13 was responsible for these violent acts and the defendants were involved with MS-13 in some capacity. Indeed, a number of defendants have tattoos bearing symbols affiliated with MS-13 or have been photographed flashing gang signs, wearing clothing, or demonstrating other attributes affiliated with MS-13. Although various defendants contest their involvement in the charged *racketeering conspiracy* and contest the dates in which they could have plausibly participated in any such conspiracy, no defendant proceeding to trial on April 4 has contested on the record their affiliation or membership in MS-13 generally. Indeed, most defendants recently filed a motion alleging outrageous government conduct in which they seem to concede that MS-13 was responsible for the 2008 Bologna murders in San Francisco wherein a family of three was shot to death (Dkt. No. 3136).

*Third*, there is a strong likelihood that the trial will attract extensive media coverage which may risk juror identities becoming public. The case has already been covered in the media — articles have not only covered the initial indictment, but have covered the death penalty authorization process, the gang-expert evidentiary hearings, and guilty pleas of

3

various defendants. This publicity is not only due to government press releases. Indeed, the allegations raised in defendant Guillermo Herrera's motion to dismiss for outrageous government conduct were recently featured in a February 10 *Wall Street Journal* article — although neither the government nor defense counsel solicited such coverage. Public interest is likely to only increase as the case proceeds to trial — the case is a large-scale criminal prosecution involving a notorious street gang. It is also very likely that publication of juror names or identities may result in harassment not only from MS-13 members or affiliates, but from MS-13 rivals or enemies who may be interested in the jurors *convicting* the defendants.

*Fourth*, the government has made an adequate showing that the defendants have attempted to interfere with witnesses and the judicial process in the past. Since their incarceration for the immediate case, the defendants have been involved in a number of violent or threatening incidents while at the courthouse or while in custody. Each of the incidents suggest a disregard for the judicial process and/or a willingness to commit acts of violence to secure freedom from incarceration.

Defendants Guillermo Herrera, Moris Flores, and Erick Lopez have attacked codefendants while in the courthouse despite being under the supervision of the United States Marshals Service (Leung Decl. ¶¶ 4, 5, 8). The reason for these attacks may have been the perceived cooperation of those codefendants. Defendants Jonathan Cruz-Ramirez and Walter Cruz-Zavala allegedly assaulted two deputies of the Alameda County Sheriff's Office — resulting in one deputy sustaining a fractured nose (*id*. at ¶ 6). Similarly, defendant Guevara threatened to kill an Alameda County Sheriff's Office deputy and flashed gang signs and his MS-13 tattoo at the deputy (*id*. at ¶ 3). Defendant Guevara also attempted to mail a photograph identifying three individuals as "rats" — possibly to target those perceived cooperators for attack or intimidation (Leung Decl. ¶ 6; Horton Decl. ¶ 2). While in the holding cells at the courthouse awaiting an evidentiary hearing, defendant Cruz-Ramirez purportedly asked a fellow inmate to relay the message that certain MS-13 gang members were cooperators and "needed to be handled" (Horton Decl. ¶¶ 3, 4). Defendant Flores was purportedly involved in an attempt to coordinate an attack on a United States Marshals

4

1  Service prisoner van to free some of his codefendants (*id*. at ¶ 2). Defendant Flores allegedly
2  attempted to coordinate this attack/escape with unincarcerated MS-13 gang members who
3  would assist from the outside.

4  Although not all of the defendants proceeding to trial on April 4 were involved in the
5  aforementioned incidents, each defendant is alleged to have been a member of a violent
6  criminal organization which has and is willing to attack and/or kill civilians and law
7  enforcement. Accordingly, the concern is not necessarily that each individual defendant will
8  directly harass, intimidate, attack, or kill jurors in this case — but that the defendants'
9  unincarcerated or incarcerated fellow MS-13 members will do so at their behest.
10 Furthermore, the only defendants who did not directly participate in any of the incidents
11 described in the preceding paragraph — defendants Marvin Carcamo and Giovanni
12 Hernandez — are still charged with racketeering conspiracy and conspiracy to murder and
13 assault with a dangerous weapon in aid of racketeering. The nature of these conspiracy
14 charges is that the defendants are allegedly willing and able to contribute to collective action
15 to aid the gang and its interests.[2]

16 Additionally, it is noteworthy that there is a protective order in place that prevented
17 the defendants and the public (but not defense counsel) from learning the identities of civilian
18 witnesses in this case until a deadline shortly before trial. Accordingly, the dearth of civilian
19 witness intimidation and attacks in this case is not necessarily a signal that no such incidents
20 would have occurred in the absence of the protective order. In this connection there is a need
21 for the accuseds to know the names of the civilian witnesses but that same need does not
22 extend to the jurors.

23 Finally, the instant case will necessarily involve extensive testimony and evidence
24 regarding violent crime and assaults. A number of the charged incidents were perpetrated
25 against random civilians unaffiliated with any gang. There is a substantial risk that individual
26 jurors will be fearful for their safety if their identities were disclosed to the defendants or the

---

[2] Defendant Carcamo did not seek to join in any of the motions against the empanelment of an anonymous jury.

5

1  public. This fear might interfere with the ability of the jurors to fulfill their fact-finding role.
2  Juror fear becomes even more significant in a lengthy trial — which the instant trial is
3  expected to be. Accordingly, by offering the jurors anonymity — albeit without
4  acknowledging the true reason for their anonymity — the jurors will be more likely to feel
5  that they will not face reprisal or negative attention for any decision they may reach.

## CONCLUSION

For the reasons stated herein, an anonymous jury will be empaneled for the April 4 trial. Of course, reasonable safeguards will be adopted to ensure that any risk of prejudice to the defendants is minimized. The jurors will not be told that their anonymity is due to safety concerns, but rather, will be provided the neutral explanation that anonymity from the public, the government, and the defense is to prevent attempts by the media to contact the jurors and to preserve the neutrality of the judicial process given the anticipated length of the trial.

**IT IS SO ORDERED.**

Dated: March 1, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE