IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | |
| v. | **ORDER RE SCOPE OF ADMISSIBILITY OF STATEMENTS TESTIFIED TO BY WITNESS JAIME MARTINEZ** |
| IVAN CERNA, *et al*. | |
| Defendants. | |
| _____/ | |

**INTRODUCTION**

In this RICO/VICAR gang prosecution now in trial, a government informant has recently testified to a number of statements made by four of seven defendants, none of which were previously noticed under our local rule. For most of these statements, the Court has already provisionally instructed the jury that the statements were admissible only against the declarant-defendants. After full consideration of further briefing and argument by all parties, broader use by the jury will be allowed, for the following reasons.

**STATEMENT**

In order to ensure the orderly progression of trial in this large-scale RICO/VICAR gang prosecution — which is anticipated to last up to six months — a pretrial order previously set pretrial deadlines for the government to provide summaries of all coconspirator statements and Rule 404(b) evidence it intended to introduce at trial. Specifically, the government was to provide the summaries of the coconspirator statements and Rule 404(b) evidence to the defense

seven weeks before trial (Dkt. Nos. 1921, 2513). In compliance with the order, the government provided the defense with summaries of over 400 coconspirator statements it might introduce at trial and filed notice that it did not intend to introduce any Rule 404(b) evidence, stating that all evidence would address charged conduct.

Prior to the pretrial conference, Defendant Guillermo Herrera moved for referral to a magistrate to determine whether the coconspirator statement summaries were inadequate (Dkt. No. 3121). Instead, the Court conducted the review on its own (Dkt. No. 3644). After reviewing the summaries, it was found that the summaries were largely sufficient but the government was required to provide some supplemental information to the defense (Dkt. No. 3740). Defendant Herrera also moved to exclude all "other acts" evidence not described as an overt act in the indictment as unnoticed Rule 404(b) evidence (Dkt. No. 3153). This motion was denied without prejudice to challenges to specific items, as the motion did not detail what acts were challenged — and without any detail, the Court was unable to evaluate whether the acts were evidence of the conspiracy rather than Rule 404(b) "other acts" evidence (Dkt. No. 3644).

On May 5, about one month into the trial, the government notified the defense that it would introduce "in sum and substance" six statements made by various defendants through its witness Jaime Martinez, a government informant and admitted former member of the 20th Street clique of MS-13 — the alleged clique to which defendants allegedly belonged (Dkt. No. 4178-1). At the time of the government's disclosure, Witness Martinez had already testified one day in what proved to be a nine-day examination after counsel for all seven defendants had an opportunity to examine.

The next morning, counsel for Defendant Moris Flores reacted to this disclosure, explaining that while he did not object to "the prosecution eliciting whatever evidence they want on their direct examination," cross-examination should be postponed so that the recently-disclosed statements could be investigated by the defense counsel (Tr. 5442). Later, he also argued that some of the evidence would be inadmissible where it concerned juvenile conduct and, at all events, the government had not proven the *corpus delicti* for each of the incidents

2

1  (Tr. 5444). The Court ruled that the evidence was at least admissible as predisposition
2  evidence, given that entrapment had been raised by the defense, and noted that counsel for
3  Defendant Flores would have at least a few days to prepare for cross-examination, as the
4  government did not anticipate completion of its direct examination until the following week (Tr.
5  5442–5443, 5459). The ruling requested that the motion be remade if counsel was still
6  unprepared for cross-examination when the time came.[1]

7  On May 9, counsel for Defendant Flores filed a motion to exclude the statements on
8  largely the same bases as articulated in his May 6 oral "notice" (Dkt. No. 4178). The motion
9  was denied insofar as the objected-to statements were determined to be admissible at least with
10 respect to individual defendant-declarants as predisposition evidence responsive to the
11 entrapment defense raised by the defendants (Tr. 5739). A ruling was reserved, however, on the
12 extent to which the statements would also be admissible more broadly as coconspirator
13 statements.

14 On May 10 — the last day of Witness Martinez's direct testimony — he finally testified
15 to the statements noticed by the government on May 5 (Tr. 5776–79, 5790–5802). In substance,
16 Witness Martinez testified that: (1) in 2004, Defendant Flores stated that a week after "Trucho"
17 was killed, he and two other 20th Street clique members went looking for Norteños and
18 Defendant Flores shot a Norteño waiting at a red light at the "top of the hill" in Daly City, after
19 which the victim's car crashed; (2) at the "little park" in 2006, Defendant Flores stated that he
20 and Danilo Velasquez argued with three Norteños at a 7-11 store at Ocean Avenue and
21 Alemany Boulevard, waited for a Norteño to exit the store, at which point Defendant Velasquez
22 shot the Norteño;[2] (3) at the "little park" in 2006, Defendant Flores stated that he shot a Norteño

---

[1] Defendant Flores also filed a pretrial motion regarding *corpus delicti*, which was denied (Dkt. No. 3644). Defendant Flores has not provided any basis to reconsider that prior ruling. As stated previously, the purpose of the *corpus delicti* rule is to guard against uncorroborated confessions or admissions serving as the *sole basis* for conviction of a criminal charge or proof of an essential element of a crime. It cannot be determined whether the *corpus delicti* rule has been violated until presentation of the evidence is complete. Accordingly, as the pretrial order explained, a motion based on *corpus delicti* is not yet ripe, assuming for the sake of argument that the rule otherwise has applicability.

[2] Danilo Velasquez is a defendant in this RICO/VICAR prosecution. He was, however, severed from this trial and will be tried after the instant trial is concluded.

3

near 24th and Mission Streets after pulling his hair to get his attention; (4) at an August 2005 gang meeting, Defendant Erick Lopez stated that he observed Sergeant Molina leaving a local police station and believed it would be a good opportunity to "tail" Sergeant Molina if MS-13 planned to do anything to Sergeant Molina; (5) at a gang meeting, Defendant Angel Noel Guevara stated he had founded a clique named Cangrejera in El Salvador; (6) at a 2006 Sutro Park gang meeting, Defendant Guevara stated that preferred using knives over guns for "jale" because knives were easier to use and did not make noise; (7) at a 2007 gang meeting at the "little park," Defendant Guevara stated that not having a firearm would not deter him from doing "jale" as he could do "jale" with a knife; (8) in 2006, Defendant Cruz-Ramirez called from Honduras and told Witness Martinez that he had escaped from a juvenile facility in the company of some Norteños, in apparent anticipation of "punishment" for consorting with Norteños; and (9) as a result and as follow up, a year later Defendant Cruz-Ramirez stated that he had already "put in work" to "clean up his name" after escaping from a juvenile facility with Norteños.

On May 10, the government also produced materials from a Daly City Police Department homicide investigation file that describe the Francisco Garcia homicide — a homicide that the government believed was the result of the "top of the hill" shooting involving Defendant Flores (item one above). In response, counsel for Defendant Flores stated that he would not continue with his cross-examination of Witness Martinez and instead would — sometime in the future — file a motion for dismissal of the indictment, mistrial of the case, dismissal of one or more counts, and/or to strike evidence (Dkt. No. 4190). Counsel alleged that the prosecutor handling the instant case had known about the incident since at least October 2008. Ultimately, however, the government showed that it had produced the ROI describing the incident approximately six months earlier (Dkt. No. 4215).

Nonetheless, based on counsel for Defendant Flores' representation that he could not then perform an adequate cross-examination regarding the "top of the hill" incident and the other incidents noticed on May 5, the Court postponed his cross-examination of Witness Martinez until the defense case-in-chief with respect to those incidents described by the

4

statements at issue (Tr. 5916, 5919, 5924). At the very least, this postponement will be for one month, as the government has estimated it will need at least one more month to complete its presentation of its case-in-chief. Other defense counsel proceeded on their cross-examinations of the witness.

On its own motion, the Court requested further briefing regarding the contours of admissibility for the statements at issue, including the hearsay/coconspirator issue and the degree to which Rule 404(b)'s notice requirement would apply to any predisposition evidence sought to be introduced by the government (Dkt. No. 4231). Oral argument on these issues was held on May 19.

## ANALYSIS

### 1. ADMISSIBILITY AS COCONSPIRATOR STATEMENTS

This order holds the nine statements described above are admissible as coconspirator statements under Rule 801(d)(2)(E). A statement is admissible under Rule 801(d)(2)(E) if: (1) a conspiracy existed when the statement was made; (2) the defendant had knowledge of, and participated in the conspiracy; and (3) the statement was made in furtherance of the conspiracy. *United States v. Larson*, 460 F.3d 1200, 1211 (9th Cir. 2006). Evidence presented by the government at trial to date has established by a preponderance of the evidence that a conspiracy existed, the statements at issue were made during the course and in furtherance of that conspiracy, and the declarants at issue and defendants were members of the conspiracy.[3] *United States v. Bourjaily*, 483 U.S. 171, 175 (1987); *United States v. Peralta*, 941 F.2d 1003, 1006–07 (9th Cir. 1991). In a myriad of ways, the statements sought to further the conspiracy's common objective and/or to set in motion transactions that were integral to the conspiracy. *Larson*, 460 F.3d at 1211. Each of the statements is discussed in turn.

Defendant Flores' 2004 statement regarding the 2004 "top-of-the-hill" Daly City incident promoted both his and his fellow gang members' involvement in the shooting of gang

---

[3] The indictment charges three separate conspiracies but they are somewhat overlapping and all relate to the same clique of MS-13. Therefore, for the sake of simplicity, this order will refer to "conspiracy" although there are three conspiracies charged.

5

1 rivals. The statement explained that the shooting was retaliation for the murder of "Trucho" —
2 a former leader of the clique. The statement expressed a belief that the deceased gang leader
3 could now "rest happily" because of the retaliation. The statement could thus reasonably be
4 found to have been made to keep Defendant Flores' coconspirators abreast of the gang's
5 ongoing activities, foster trust and cohesiveness among the conspirators, reiterate and reinforce
6 the gang's common purpose of attacking rivals, reassure fellow conspirators of the conspiracy's
7 continued existence, and allay fears regarding the strength and ability of the gang to mete out
8 swift retaliation. Accordingly, the statement was made in furtherance of the conspiracy. *See,*
9 *e.g., United States v. Yarbrough*, 852 F.2d 1522, 1535–36 (9th Cir. 1988).

10 Similarly, Defendant Flores' 2006 statements regarding: (1) his confrontation of
11 Norteños at a 7-11 store and Danilo Velasquez's subsequent shooting of a Norteño outside the
12 store; and (2) his shooting of a Norteño after pulling his hair sought to further the conspiracy in
13 the same way. The statements could reasonably be found to have been made to keep Defendant
14 Flores' coconspirators abreast of the gang's ongoing activities, foster trust and cohesiveness
15 among the conspirators, reiterate and reinforce the gang's common purpose of attacking rivals,
16 and reassure fellow conspirators of the conspiracy's continued existence.[4]

17 Defendant Lopez's August 2005 statement at a gang meeting furthered the gang's
18 deliberations on how to handle an "enemy" of the 20th Street Clique — Sergeant Mario Molina
19 of the SFPD's Gang Task Force. Clearly, Defendant Lopez's detailing of Sergeant Molina's
20 movements and proposal that there seemed to be a "good opportunity" sought to inform his
21 coconspirators of a previously unforeseen avenue to exploit.

22 Defendant Cruz-Ramirez's 2006 call to Witness Martinez to inform him that he had
23 escaped from a juvenile facility in the company of Norteños was an admission of wrongdoing in
24 violation of gang rules. The statement could reasonably be found to have been made in
25 anticipation of the "higher-ups" responding by punishing Defendant Cruz-Ramirez — which
26 furthered the gang policy of maintaining discipline and furthered the gang's interest in ensuring

---

[4] Although Witness Martinez was a government informant in 2006 and 2007, statements made to a government informant may still be found to be coconspirator statements under Rule 801(d)(2)(E). *See, e.g., United States v. Zavala-Serra*, 853 F.2d 1512, 1516 (9th Cir. 1988) (citations omitted).

6

its rules would be followed. The statement also served to foster trust by demonstrating that Defendant Cruz-Ramirez was mindful of the gang's rules and the consequences of violating them. His statement also served to keep his coconspirators abreast of his whereabouts and assure them that he was still a participant in the conspiracy. (This statement is best understood in light of the next one by the same defendant.)

Similarly, the related statement by Defendant Cruz-Ramirez — made the following year to Witness Martinez and Defendant Carcamo (gang leaders at the time) — to the effect that he had already completed the necessary "jale" required of him for escaping with the Norteños, furthered the conspiracy's interest in maintaining gang discipline. It also served to keep Defendant Cruz-Ramirez's coconspirators abreast of ongoing activities and fostered trust.

Defendant Guevara's 2006 and 2007 statements made at gang meetings regarding his preference for knives — rather than firearms — to do "jale" furthered the conspiracy by informing his coconspirators of his preferred method of conducting violent affairs of the enterprise. By explaining that knives were "easier" and did not make noise, Defendant Guevara arguably sought to induce his fellow conspirators to use a less conspicuous weapon in circumstances where a firearm was impracticable. Indeed, Defendant Guevara's 2007 statement was made in the context of Defendants Guevara and Carcamo chastising a younger conspirator who stated he was unable to do "jale" because he was not given a weapon. By explaining that "jale" could have been done with a knife — an easily obtainable item — Defendant Guevara's statement sought to prompt future action by his coconspirators by instructing them on how to perform their required "jale" in such circumstances.

Defendant Guevara's further statement at a gang meeting regarding his prior founding of a clique in El Salvador was also in furtherance of the conspiracy. As witnesses have testified, Defendant Guevara allegedly recounted the fact he had started the clique in order to enhance his status in the gang — seeking to foster trust and to prompt his fellow gang members to view him as a "leader" that could be looked up to. *See United States v. Flores*, 572 F.3d 1254, 1264 (11th Cir. 2009). The statement also reassured his coconspirators that MS-13 had a broad-reach and history that extended beyond the 20th Street clique.

### 2. NOTICE OF COCONSPIRATOR STATEMENTS

The next issue is the extent to which the late disclosure of the coconspirator statement summaries compromised their admissibility. After full consideration of the record and oral arguments by the parties, this order finds the statements are admissible despite their late notice.

While the local rule and the scheduling orders required advance notice/summaries of coconspirator statements, the purpose of the rule and the orders was to allow for adequate time for the parties to litigate the admissibility of the statements. As Local Rule 16-1(c)(4) explains, a summary of coconspirator statements must be provided "in sufficient detail that the Court may rule on the admissibility of the statement." The stated purpose of the local rule has nothing to do with facilitating defense investigation and preparation. Instead, the rule is geared to the orderly progression of trial and orderly ruling on admissibility.[5]

Before trial, the government made a good faith effort to comply with the local rule and the scheduling orders and produced a comprehensive document summarizing over 400 statements, sorted by sponsoring witness. This was seven weeks before the first witness. The government's late disclosure of a modest number of statements is not sufficiently prejudicial or disruptive to the orderly progression of trial to warrant complete exclusion.[6] The parties have now been given a full opportunity to argue the admissibility of the statements.

Part of the problem is that late in the overall timeline, the defense of entrapment was raised. This motivated the prosecutors to find more predisposition evidence predating the alleged inducement by government informants operating within the gang. This led to a focus on

---

[5] Notably, although the government was ordered to provide further bill of particulars on several occasions, the government was never ordered to provide notice of each and every instance of charged conduct it intended to introduce with respect to the conspiracy counts (Dkt. Nos. 632, 1604, 2084). Indeed, prior orders have emphasized that "[a] defendant is not entitled to know all the evidence the government intends to produce but only the theory of the government's case" (Dkt. Nos. 632, 1604) (citing *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986); *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979)).

[6] This ruling also applies to Witness Martinez's testimony on May 4 regarding a coconspirator statement by "Camaron" regarding a new "policy" regarding tattoos (Tr. 5355–56). At the time the statement came into evidence, the Court found that it was admissible as a coconspirator statement. The Court, however, reserved ruling on whether the statement should be stricken because it was not previously noticed (Tr. 5356, 5371–72). Given that the Court has been able to adequately consider and rule on the admissibility of the statement without need for additional proceedings and defense counsel had over a week from the time when the statement was entered into evidence until cross-examination began, the statement will not be stricken from evidence for lack of prior notice.

1 earlier events. This led to the late disclosures. This circumstance supports good cause for
2 corresponding late disclosures by the government.

3 Going forward, however, the government must provide the defense with summaries of
4 any "new" coconspirator statements it seeks to introduce **AT LEAST ONE WEEK PRIOR** to the
5 statement's introduction. Any objection to the admissibility of any noticed-statement must then
6 be filed in writing **WITHIN THREE CALENDAR DAYS** of service of the notice. The Court will
7 then allow argument and rule on the statement's admissibility. For coconspirator statements
8 already noticed before trial in the long list, the prosecutors may (but are not required to) give a
9 fresh **ONE-WEEK NOTICE** stating that a particular witness will testify to a particular statement.
10 *If* such a fresh notice is given, then the defense must file a written objection **WITHIN THREE**
11 **CALENDAR DAYS** of service or any objection to those items will be deemed waived, *i.e.*, it will
12 not be entertained as the witness is testifying. If a fresh government notice is not given,
13 however, an oral objection will be allowed as the witness is testifying.

14     **3.     RULES 404 AND 405**

15 Because the statements were in furtherance of the charged conspiracy, they necessarily
16 involve *charged* conduct, not *uncharged* conduct, and thus Rule 404(b) is inapplicable, for
17 subsection (b) is directed to "*other* crimes, wrongs, or acts." This is dispositive as to Rule
18 404(b). As to the 2006 key theft/burglary, moreover, Witness Martinez gave a first-hand
19 account. This avoids any hearsay hurdle. All perpetrators were MS-13 members, according to
20 the testimony, and thus the jury could reasonably find it to be charged conduct falling within the
21 time period covered by the indictment (Tr. 5806; Dkt. No. 4260). Being charged conduct, it too
22 falls outside Rule 404(b) and no prior notice of the event was required under Rule 404(b).[7]

23 It is thus unnecessary to reach the question of admissibility of the foregoing items *solely*
24 as predisposition evidence, much less whether predisposition evidence must satisfy Rule 404(b)
25 and its advance-notice requirement.

---

[7] It should also be noted that although defense counsel for Defendant Carcamo alleged that the house-key theft and robbery in Daly City was "a complete surprise" to counsel and indicated that he would be filing a motion to strike at a later time, no such motion to strike was ever filed, nor was any additional briefing on the issue submitted (Tr. 5863–64; Dkt. No. 5873).

9

In the event, however, that any items are later deemed to be uncharged conduct by reason of a defendant having been 17 or younger at the time (or for any other reason), this order specifies that the same evidence would alternatively be and is admissible to prove predisposition, as the defense of entrapment plainly has now been raised in the defense opening statements and has permeated their cross examinations.

Under Rule 405(b), specific acts of misconduct are admissible to prove a trait of character where the trait of character is an "essential element of a charge, claim or defense," when entrapment is a defense. Quite apart from Rule 404(b), in other words, Rule 405(b) permits specific instances of conduct to prove predisposition, where entrapment is raised as a defense. *United States v. Mendoza-Prado*, 314 F.3d 1099, 1103–1104 (9th Cir. 2002); *United States v. Thomas*, 134 F.3d 975, 980 (9th Cir. 1998). These decisions are squarely on point.

True, before the decisions just cited, at least one decision had addressed predisposition evidence in the context of Rule 404(b). *United States v. Simtob*, 901 F.2d 799, 807 (9th Cir. 1990). That authority, however, did not categorically confine analysis of predisposition evidence to Rule 404(b). There was no occasion in *Simtob* to address Rule 405 or Rule 404(a). The later decisions cited in the prior paragraph *did* have occasion to address Rule 405 and Rule 404(a). The later decisions held, as stated, that once entrapment is raised, predisposition becomes an "essential element" of the case and specific instances of misconduct become admissible to prove predisposition under Rule 405(b).

Without question, the items in question, if not technically charged conduct by reason of the age of the accused, are extremely similar to the same type of conduct charged after age 18. Thus, any similarity requirement is satisfied.

No objection has been raised that predisposition evidence would be premature before the government's rebuttal case. Defense counsel vigorously advanced the entrapment defense in their openings and have cross-examined several government witnesses to try to show that the gang leadership was controlled by government informants and operatives who dramatically upped the tempo of violence. In these circumstances, the defense evidently acknowledges that the door has been opened to predisposition evidence (even if it were not charged conduct). *See*

10

75 Am. Jur. 2d *Trial* § 281 (2007).[8]

**CONCLUSION**

In sum, the jury will be instructed that it may consider the statements discussed herein for broader purposes than previously instructed. Specifically, the jury will be instructed that the statements at issue as testified to by Witness Martinez are admissible against all defendants. The jury will also be instructed that the 2006 house key theft incident involving Defendant Carcamo may be considered against all defendants. Out of deference to counsel for Defendant Flores, this broader instruction will be postponed until after he has completed his examination in the defense case, as a caution against the chance that some turn in that examination may require adjustment in the admonition.

**IT IS SO ORDERED.**

Dated: May 27, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[8] It is premature to hold that the defense has made a threshold showing of entrapment sufficient to shift the burden of disproving entrapment to the government. *See United States v. Poehlman*, 217 F.3d 692, 698 (9th Cir. 2000).