United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

IVAN CERNA, *et al*.

    Defendants.
                                /

No. CR 08-0730 WHA

**ORDER RE RECORDINGS WHEN NO SPONSORING WITNESS WAS PRESENT INCLUDING TX 164T**

## INTRODUCTION

In this large RICO/VICAR prosecution now in trial, a government informant wore a bodywire and returned recordings to ICE agents claiming they were made at gang meetings. The informant was eventually indicted for lying to agents (about other things) and will not be a government trial witness. Some of the recordings were received in evidence anyway because others present at the events recorded were able to authenticate them. In an attempt to get other recordings into evidence, the government had a cooperator, one not present at the event, identify voices and translate the dialogues from Spanish to English. In the circumstances of this case, this order holds that this is insufficient foundation for admissibility. By the same token, the same is inadequate foundation when the same materials are offered by the defense.

## STATEMENT

All recordings at issue were made by confidential informant SF-1211, now publicly known to have been Roberto Claros Acosta. Until shortly before trial, SF-1211 was slated to

testify. Through him, the government was poised to admit a swath of recordings. All parties appeared to envisage SF-1211 as a principal witness (*see, e.g.*, Feb. 16 Tr. 93–98). The government, however, obtained information that SF-1211 may have perpetrated numerous acts of violence abroad and then lied about it to agents, triggering a request for a trial continuance so the prosecutors could regroup (Dkt. No. 3408). Government counsel acknowledged that the absence of SF-1211 would complicate the government's path to laying foundation for his recordings (Feb. 16 Tr. 93). Ultimately, the government indicted SF-1211 for making false statements to federal agents.[1]

After the government decided not to call SF-1211, it sought to lay foundation for SF-1211's recordings through cooperating witnesses Abraham Martinez, Jaime Martinez, and Jose Espinal. This succeeded where the sponsoring witness was present during the recorded conversation and testified that the recording was an accurate reflection of the conversation (*see, e.g.*, Tr. 10618–25).

The parties were notified, however, mere voice identification would likely be insufficient to lay foundation for those recordings where the sponsoring witness was not present for the conversation (Tr. 10048, 10058–59, 10547–48). The Court explained that although the government had presented evidence that the recordings were not tampered with *after* creation, a number of outstanding questions remained — such as how the recordings were created in the first place and the circumstances surrounding the release and retrieval of the recording device to/from SF-1211 and the instructions given to SF-1211. A final ruling on the matter was reserved until the government had an opportunity to lay its best foundation. In this interim period, the government presented foundational testimony from two additional witnesses: (1) Peter Anderson, a certified Spanish-Language interpreter who assisted with the translation of the transcripts; and (2) ICE Agent Benjamin Horton, who testified to his monitoring of the consensual phone call memorialized in TX 162T.

---

[1] The trial of SF-1211 is currently scheduled for July 11, 2011. *See United States v. Roberto Acosta*, Case No. CR11-0182 CRB. Nonetheless, his counsel appeared herein before trial and stated that SF-1211 would freely testify as to many items in his role as an informant/cooperation. Defense counsel thus far have not called SF-1211 as a witness.

2

**ANALYSIS**

To establish foundation of an audio recording, the trial court, in the exercise of its discretion, must be satisfied that the recording is "accurate, authentic, and generally trustworthy." *United States v. Panaro*, 266 F.3d 939, 951 (9th Cir. 2001). The district court has broad discretion in determining whether proper foundation has been laid. *United States v. King*, 587 F.2d 956, 961 (9th Cir. 1978). Generally, a participant in or a witness to the recorded conversation must testify that the recording accurately reflects the conversation in question. When this is not possible, a recording may still be admissible if there is sufficient circumstantial evidence that a recording is a complete, accurate reproduction of the conversation in question.[2]

To lay foundation for the SF-1211 recordings, the government has presented: (1) testimony that a WAVchecker review has shown that the body wire recordings were not altered *after* creation and that a new watermark was created anytime the device was turned off (Witness Peter Ladefoged); (2) testimony that the Spanish-to-English translations were accurate (Witness Espinal, Witness Peter Anderson); (3) purported voice identifications of speakers in the recordings (Witness Espinal); and (4) the assertion that the device used by SF-1211 did not have a rewind feature and created a new file after any stop in recording (Witness Ladefoged). Even if the evidence presented is credited, it is not enough to establish foundation.

While some decisions have affirmed the admission of a recording despite the absence of a sponsoring witness at the recorded event, those decisions relied on significant circumstantial corroboration absent in our case. For example, although no sponsoring witness testified to the accuracy or completeness of the recordings in *United States v. Matta Ballesteros*, 71 F.3d 754, 768 (9th Cir. 1995), the recordings — of the torture and interrogation of a government agent the defendant was accused of kidnapping — were found in a codefendant's possession. The

---

[2] In making this determination, the following non-dispositive factors may be considered: (1) that the recording device was capable of taking the conversation now offered into evidence; (2) that the operator of the device was competent to operate the device; (3) that the recording is authentic and correct; (4) that changes, additions, or deletions have not been made in the recording, (5) that the recording has been preserved in a manner that is shown to the court; (6) that the speakers are identified; and (7) that the conversation elicited was made voluntarily and in good faith, without any kind of inducement. *United States v. King*, 587 F.2d 956, 960 (9th Cir. 1978) (citing *Untied States v. McKeever*, 169 F. Supp. 426, 430 (S.D.N.Y. 1958), *rev'd on other grounds*, 271 F.2d 669 (2d Cir. 1959)).

3

1  decision found the recordings were properly admitted, specifically noting that a recording found
2  in the possession of a defendant (or codefendant) "should not be subject to the same
3  requirements we apply when a government agent or informant initiates a conversation knowing it
4  is to be recorded." *See also United States v. O'Connell*, 841 F.2d 1408, 1421 (8th Cir. 1988)
5  (affirming admission of recordings from an answering machine located in the defendant's
6  warehouse used for a marijuana operation, noting significance of seizure of tapes from the
7  defendant's possession).

8  Other decisions have found substitute foundation because in addition to voice
9  identifications, an agent monitored the recording or the recording was made under tightly
10 controlled circumstances. *See, e.g.*, *United States v. Shukitis*, 877 F.2d 1322, 1327 (7th Cir.
11 1989) (agent not a participant in recorded conversations but was physically present and
12 tested/verified the equipment immediately before and after giving it to the informant);
13 *United States v. Valle-Martinez*, 336 Fed. App'x 720, 724 (9th Cir. 2009) (unpublished)
14 (call made from defendant's prison housing unit using his unique pin and inmate identification
15 number); *United States v. Payton*, 1996 WL 429133, at *3 (9th Cir. 1996) (unpublished)
16 (*videotapes* for which: (1) an agent testified he had set up and instructed the informant on how to
17 use the recording device; (2) the videotapes had a date counter that moved continuously forward
18 and did not skip or stop; (3) the parties stipulated that a government witness would testify to the
19 absence of tampering; and (4) the tapes depicted conversations with the defendant in their
20 entirety, including the defendant entering and leaving the room).[3]

21 These circumstantial safeguards are absent in our case. At best, there is only tenuous
22 circumstantial evidence that the recordings/transcripts are accurate, authentic, and generally
23 trustworthy. *First*, the recordings were purportedly made by an individual so unreliable that the
24 government indicted him for lying to agents rather than using him as a witness at trial.
25 *Second*, the informant could start and stop recording at will and/or cover the microphone to blot

---

[3] Ninth Circuit Rule 36-3 permits citation of unpublished decisions issued after January 1, 2007, although such decisions are not binding. With some exceptions, the rule generally prohibits the citation of unpublished decisions issued before January 1, 2007. Although *United States v. Payton*, 1996 WL 429133, at *3 (9th Cir. 1996) (unpublished), does not fall within the exceptions outlined in the rule, both sides addressed the decision in their briefs and in oral argument.

4

out voices so that some degree of manipulation was possible. *Third*, it is impossible to know when and where the recordings were made or the event being recorded (or who was present but not speaking or whose voices could not be identified). Aside from the usual need to know when, where, and who, we have the additional, unusual need to know when in this case to distinguish between acts by defendants as juveniles versus as adults, some of the defendants clearly having been mere juveniles at the time of key events (but adults at later key events). *See* 18 U.S.C. 5031, *et seq*.

Finally, a significant difference between the instant case and those that have allowed recordings without a sponsoring witness who was present at the scene is that the instant recordings are in Spanish and there is no independent way for the jury to make their own voice comparisons from known samples to determine whether Witness Espinal's voice identifications were accurate. In effect, the jury is captive to the opinion of the cooperating witness — an uncomfortable proposition given that Witness Espinal made at least one significant error with respect to voice identification. Specifically, he identified defendant Jonathan Cruz-Ramirez as a participant in a recorded conversation (DH 201) on July 23, 2008, when all agree that defendant Cruz-Ramirez was in custody and could not have been in the recording (Tr. 10555).

In sum, at least on the present trial record, the government has failed to lay adequate foundation for TX 151T, TX 174T, and TX 178T. They will not be admitted into evidence. As stated at trial, TX 164T must be redacted prior to going to the jury to exclude those portions that Witness Espinal was not present for (Tr. 10625–67, 10934).

In contrast, the government has laid adequate foundation regarding TX 162T. The testimony of ICE Agent Horton clearly established that the recording equipment was operated by ICE Agent Chris Merendino, that the "preamble" establishing the time, date, and participants in the call was recorded by Agent Merendino and was accurate, and the recording occurred under ICE Agent supervision at ICE offices (Tr. 11537–38). The entirety of the exhibit is admitted without redaction.

*          *          *

The same evidentiary ruling must likewise apply to any passages offered in evidence by

5

the defense. Having successfully blocked the government, the defense will be held to the same foundational standard. Therefore, the passage from TX 164T offered by Attorney Sabelli (on behalf of defendant Herrera) covering minutes 52:00 to 59:57 of the recording, a passage unauthenticated by any trial witness, will not be received in evidence on the present trial record.

The foregoing is dispositive. That constitutional arguments raised do not excuse foundational requirements. Moreover, the supposed key passage in the proffer is gibberish. It requires considerable imagination to find in it the meaning desired by counsel. There is no need to delve further into the constitutional caselaw. Finally, the rule of completeness is inapplicable. The proffer cannot and should not come into evidence to clarify other passages received in evidence, for different subjects are involved.

Therefore, the passage offered by defendant Herrera from TX 164T for minutes 52:00 to 59:57 is not received in evidence.

**IT IS SO ORDERED.**

Dated: July 8, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6