1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10    UNITED STATES OF AMERICA,                    No. CR 08-0730 WHA

11                 Plaintiff,

12        v.

13    ANGEL NOEL GUEVARA,
      MORIS FLORES,
14    MARVIN CARCAMO,
      JONATHAN CRUZ-RAMIREZ,
15    GUILLERMO HERRERA,
      WALTER CRUZ-ZAVALA, and
16    ERICK LOPEZ.

17                 Defendants.
                                                 /
18

19

20                    **COURT'S PROPOSED CHARGE TO THE JURY**

21            Appended hereto is a copy of the draft charge to the jury.  It will be reviewed at the

22    charging conference on **MONDAY, JULY 25 AT 1:30 P.M.**  The proposed special verdict form

23    distributed to counsel on July 11 will also be reviewed at the charging conference, although the

24    Court has already solicited and received written comments on the form.

25

26

27

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

### ADMONITION TO COUNSEL

2        Appended hereto is the draft charge to the jury to be discussed with the Court at the

3  charging conference.  The proposed charge is based on the way the trial has developed,

4  taking into account issues that have emerged and receded.  Subject to the upcoming

5  charging conference and any additional developments during the short remainder of trial,

6  the Court believes the proposed charge adequately and fairly covers all issues actually still

7  in play.  Therefore, in order to give the district judge a fair opportunity to correct any error

8  as matters now stand, counsel must, at the charging conference, bring to the judge's

9  attention any additions, subtractions, modifications or other objections or proposals for the

10  jury instructions as to which counsel are already on notice.  Otherwise, all such points shall

11  be deemed waived and it will not be sufficient merely to argue after the verdict that a

12  proposed instruction filed earlier in the proceedings was not adopted.  Rather, any such

13  proposal that counsel still care about must be raised anew at the charging conference.  The

14  charging conference shall be conducted so as to give full and fair opportunity for counsel to

15  raise any and all objections and proposals.  Any proposed additions, subtractions, or

16  modifications submitted after the charging conference must be based on new developments

17  during the remainder of the trial, if any.

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**1.**

Members of the jury, now that you have heard all the evidence, we are about to hear closing arguments by counsel but it may assist you for me first to give you some considerations about how to evaluate evidence and some pointers about closing argument. This will take close to an hour. Then we will have closing arguments. That will take several days. After the closing arguments, I will instruct you on the 22 counts at issue and what the government must prove to sustain a conviction. A copy of all of these instructions will be available in the jury room for you to consult as necessary.

**2.**

It is your duty to weigh and to evaluate all the evidence received in this case and to decide the facts. To those facts you must apply the law as I give it to you. You must follow the law as I give it to you whether you agree with the law or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. In following my instructions, you must follow all of them and not single out some and ignore others. You must not read into these instructions or into anything the Court may have said or done as suggesting what verdict you should return — that is a matter entirely up to you.

**3.**

You are here to determine whether each defendant is guilty or not guilty of the crimes charged in this case. Your determination must be made only from the evidence received at the trial. Defendants are *not* on trial for any conduct or offense *not* charged in this case.

**4.**

The charges against defendants are set forth in the indictment. The indictment will not be in the jury room during your deliberations. During jury selection, I summarized the indictment for you in a statement of the case. I also provided you with a summary of the charges in the indictment in the beginning of the trial. I will summarize each charge for you in my later instructions and tell you the elements that must be proven by the government. Neither the indictment or my summaries are evidence.

3

**5.**

The defendants have pled not guilty.  The defendants are presumed to be innocent and have no burden to prove anything.  It is important for you to understand that a defendant in a criminal case has a constitutional right not to testify.  No presumption of guilt may be raised, and no inference of any kind may be drawn, from the fact that a defendant in this case did not testify.  The defendants began the trial with a "clean slate" — with no evidence against them.  As to each count, the government has the burden of proving every element of the offenses.  Anytime I say in these instructions that the government has the burden of proof, it means proof beyond a reasonable doubt.

**6.**

Proof beyond a reasonable doubt is proof that leaves you firmly convinced that a defendant is guilty.  It is not enough for the government to prove that it is "more likely than not" that a defendant is guilty.   It is not required, however, that the government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation.  It may arise from a careful and impartial consideration of all the evidence or from lack of evidence.

If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that a defendant is guilty as charged, it is your duty to find that defendant not guilty.  On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that a defendant is guilty as charged, it is your duty to find that defendant guilty.

**7.**

The evidence from which you are to decide what the facts are consists of:

1.     The sworn testimony of witnesses, on both direct and
        cross-examination, regardless of who called the witness;

2.     The exhibits received into evidence;

3.     Any stipulated facts; and

4

**United States District Court**
For the Northern District of California

4.      Any facts given to you by way of judicial notice.

**8.**

Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      A suggestion in a question to a witness is not evidence unless it is agreed to by the answer.

3.      Objections by lawyers are not evidence.

4.      Testimony or exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered.  In addition, some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

5.      Anything you may have seen or heard outside of the trial is not evidence.

**9.**

On a few occasions in this long trial, some lawyers have sometimes sniped at others. You should ignore these comments and decide the case fairly based on the evidence and the law without regard to lawyer personalities.   In this case we have excellent counsel on both sides.

**10.**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example, if you wake up in the morning and see that the sidewalk is wet,

1  you may find from that fact that it rained during the night.  However, other evidence, such

2  as a turned-on garden hose, may explain the presence of water on the sidewalk.  Therefore,

3  before you decide that a fact has been proven by circumstantial evidence, you must consider

4  all the evidence in the light of reason, experience and common sense.

5       You should consider both direct and circumstantial evidence.  The law permits you

6  to give equal weight to both, but it is for you to decide how much weight to give to

7  any evidence.

8                                            **11.**

9       For recordings, some were in English.  The transcripts were shown to you for your

10 convenience.  When the audio recording is in English, however, it is the audio recording

11 itself that is the evidence, not the transcript.  If you heard something on the recording

12 different from what appeared in the transcript, what you heard is controlling.

13      For foreign language recordings, however, transcripts of the recordings containing

14 official English-language translations were admitted.  In these instances, it is the English-

15 language translation that is the evidence, not the recording.  Although some of you may know

16 the Spanish language, you must go by the English-language translation in the transcripts.

17      Some exhibits may have some Spanish-language writings on them, but will not be

18 accompanied by a translation.  You are to disregard all such Spanish-language writings,

19 except for writings that you find are simply monikers, clique names or dates.

20                                           **12.**

21      You have heard testimony about recordings made by informants, some of which were

22 received in evidence and some of which were not.  You should not speculate about recordings

23 not received in evidence.  There are several reasons that items may not have been offered or,

24 if offered, may have been excluded from evidence, including the saving of trial time.  The

25 question is whether or not the testimony and exhibits received in evidence are sufficient to

26 prove the charges against defendants and, in evaluating that question, you should not

27 speculate about items not received in evidence.  Some exhibits have redacted passages.  You

28 may not speculate about what has been redacted.  Redactions are irrelevant material.

**13.**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it or none of it.  In considering the testimony of any witness, you may take into account:

1.   The opportunity and ability of the witness to see or hear or know the things testified to;

2.   The ability of the witness to remember the events testified to;

3.   The witness' manner while testifying;

4.   Any interest of the witness in the outcome of the case;

5.   Any bias or prejudice;

6.   Whether other evidence contradicted the witness' testimony;

7.   The reasonableness of the testimony in light of all the evidence; and

8.   Any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  Nor does it depend on which side called the witnesses or produced evidence.  What is important is how much weight you think the evidence deserves.

**14.**

A discrepancy in a witness' testimony or between a witness' testimony and that of other witnesses does not necessarily mean that the witness should be discredited.  Inability to recall is common.  Innocent misrecollection is not uncommon.  Two persons witnessing an incident or a transaction sometimes will see or hear it differently.  Whether a discrepancy pertains to an important matter or only to something trivial should be considered by you.

However, a witness who willfully testifies falsely in one part of his or her testimony is to be distrusted in others.  You may reject the entire testimony of a witness who has willfully testified falsely on a material point unless, from all the evidence, you believe that the probability of truth favors his or her testimony on other particulars.  It is always, however, up to you to decide how much weight to give any testimony by any witness.

**United States District Court**
For the Northern District of California

7

**15.**

You have heard testimony of eyewitness identifications.  In deciding how much weight to give to this testimony, you may consider the various factors mentioned in these instructions concerning witness credibility.  In addition to those factors, in evaluating eyewitness identification testimony, you may also consider:

1.      The capacity and opportunity of the eyewitness to observe the offender based upon the length of time for observation and the conditions at the time of observation, including lighting, distance and angle of view;

2.      Whether the identification was the product of the eyewitness' own recollection or was the result of subsequent influence or suggestiveness;

3.      Any inconsistent identifications made by the eyewitness;

4.      The witness' familiarity with the subject identified, including whether the offender was of a different race from the witness;

5.      The strength of earlier and later identifications;

6.      Lapses of time between the event and the identification(s); and

7.      The totality of circumstances, including combinations of the foregoing factors, surrounding the eyewitness' identification.

**16.**

You have heard testimony from persons who, because of education or experience, were permitted to state opinions and the reasons for their opinions.  Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all other evidence in the case.

**17.**

You have heard testimony that each defendant made statements.  It is for you to decide:  (1) whether the defendant made the statement; and (2) if so, how much weight to give to it.  In making those decisions, you should consider all of the evidence about the statement, including the circumstances under which the defendant may have made it.

**18.**

You have heard testimony from witnesses who pled guilty to crimes arising out of the same events for which the defendants are on trial.  As stated before, their guilty pleas are not evidence against the defendants, and you may consider their guilty pleas only in determining these witnesses' believability.

These and other witnesses entered into cooperation agreements with the government. This means that they agreed to cooperate with the government and to testify on the government's behalf in exchange for a benefit from the government in the form of a recommendation for a reduced sentence in connection with this case or another case or other benefits for themselves or their family members.

For these reasons, in evaluating the testimony of these witnesses, you should consider whether and/or the extent to which the witnesses' testimony may have been influenced by any of these factors.  You should examine their testimony with greater caution than that of other witnesses.

**19.**

You will recall that I admitted some evidence subject to certain limitations.  There are a few items of evidence for which I now need to modify my previous instruction.  With respect to each of these modifications, you are instructed to disregard my prior instruction and follow the one I am giving you now.

**20.**

You have heard testimony from an informant — Jaime Martinez — who was involved in the government's investigation and heard about the use of other individuals as informants.  Law enforcement officials may engage in stealth and deception, such as the use of informants and undercover agents, in order to investigate criminal activities.  Undercover agents and informants may use false names and appearances and assume the roles of members in criminal organizations.

**21.**

You have heard evidence about the government's handling of informants.  There is no issue in this case concerning the wisdom or manner of the government's choice of or handling of informants.  The evidence concerning the government's handling of informants may be considered by you only in evaluating the credibility of the informants [and/or determining whether any defendant was entrapped].  The general issue is whether the government has proven its case in this trial, not whether the agencies could have run a better investigation before the trial.

**22.**

You will recall that witness Jaime Martinez testified about the following alleged statements made by certain defendants:

1.  Defendant Erick Lopez's alleged statement that he saw SFPD Officer Mario Molina leave a police station in his personal car, a brown vehicle, and that this could be a good opportunity to tail Officer Molina in case he planned to do anything to Officer Molina;

2.  Defendant Angel Noel Guevara's alleged statement that he would rather use a knife than a gun to do "jale";

3.  Defendant Guevara's alleged statement that he would not have needed a gun and only needed a knife to do the "jale" that a new member had failed to do;

4.  Defendant Moris Flores' alleged statement that he had shot at an individual in another car while waiting in a car at a traffic light at Mission Street and San Jose Avenue at "the top of the hill" in Daly City and that "Trucho" could now "rest happily"; and

5.  Defendant Flores' alleged statement that he and "Triste" had gotten into an argument with three Norteños at a 7-11 on Ocean Avenue and Alemany Boulevard, after which "Triste" shot one of the Nortenos outside the 7-11.

When witness Martinez testified to these statements, I instructed you that each statement could only be considered against the defendant who witness Martinez claimed

United States District Court

For the Northern District of California

1  made the statement.  I also advised you that the instruction for some of the statements may

2  change.  I am now expanding my prior instruction.  You may consider each alleged

3  statement against all defendants, giving each such statement such weight, if any, as you

4  think it deserves.

**23.**

6      You will also remember that witness Walter Palma testified that he retrieved a .380-

7  caliber firearm from defendant Walter Cruz-Zavala so that witness Palma could resolve a

8  personal disagreement with a man named "Alfredo."  At that time, I said that you could only

9  consider the testimony to evaluate witness Palma's credibility, but that I might later expand

10  what you may consider it for.  At this time, I am expanding my prior instruction.  You may

11  consider this testimony against all defendants for the conspiracy counts and you may

12  consider it against defendant Cruz-Zavala for Count Four, giving such testimony such

13  weight, if any, as you think it deserves.

**24.**

15      You will also recall that witness Walter Palma testified that he and defendant Walter

16  Cruz-Zavala committed three robberies on the same day.  At that time, I instructed you that

17  unless I alerted you otherwise you may only consider this testimony to evaluate witness

18  Palma's credibility and to evaluate predisposition issues with respect to defendant Cruz-

19  Zavala.  I am now instructing you that you may also consider this testimony against all

20  defendants with respect to the conspiracy offenses charged in Counts One, Two, and Three,

21  giving such testimony such weight, if any, as you think it deserves.  As you will remember,

22  witness Palma also testified to *other* alleged robberies and attempted robberies.

23  Specifically, he testified to (1) his robbery of a drug dealer in the Tenderloin with "Magik";

24  (2) his robberies and attempted robberies of taco trucks; and (3) a Daly City robbery he

25  committed with two women — Ivette and Lela.  The instructions you were previously given

26  as to this part of his testimony will remain unchanged — you may only consider witness

27  Palma's testimony regarding these incidents only to evaluate witness Palma's credibility.

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

**25.**

You will also remember that witness Walter Palma testified that defendant Moris Flores stated that he "put in a lot of work for Triste" after Triste was shot. You were originally told that the statement could only be considered against defendant Flores. I am now instructing you that you may expand your consideration of the statement as to all defendants, giving the statement such weight, if any, as you think it deserves.

**26.**

All of the foregoing changes allow expanded consideration of evidence. Now, I will give you two restrictions, *reducing* the scope of your consideration.

**27.**

You will remember that witness Walter Palma testified that: (1) defendant Moris Flores had a .22-caliber firearm and accidentally discharged it while he was in a car with witness Palma and others; and (2) witness Palma sold a .45 caliber firearm to Manuel Franco and defendant Flores. I have not previously given you a limiting instruction regarding this testimony. I am now instructing you that you may not consider this testimony as evidence against defendant Flores with respect to Count Four. You may, however, give this testimony such weight as you think it deserves as to other counts and other defendants.

**28.**

You will also recall that witness Jose Espinal testified that defendant Moris Flores and Manuel Franco gave him a .357 caliber firearm and a "small" firearm on April 22, 2008. I have not previously given you a limiting instruction regarding this testimony. I am now instructing you that you may not consider this testimony as evidence against defendant Flores with respect to Count Four. You may, however, give this testimony such weight as you think it deserves as to other counts and other defendants.

**29.**

Now I would like to repeat an instruction I previously gave you. Witness Oliver Marota testified about a conversation that he had defendant Erick Lopez in a van while they were both being transported away from the courthouse to the detention facility. I previously

instructed you that you are to completely disregard the testimony and may not consider it for any purpose.  I now remind you of that admonition.

**30.**

During closing argument, counsel possibly will place transcripts of trial testimony or exhibits on the Elmo to remind you of certain evidence.  This is proper but I need to remind you that while exhibits will be in the jury room for your deliberations, there will not be any trial transcripts for you to see.

**31.**

Now we are going to hear closing argument by counsel.  This will take several days, given the scope of the trial.  Please remember that nothing said by counsel constitutes evidence.  What they say is all argument.  That a lawyer may say in closing that a witness or document made a certain point at the trial or omitted a certain point may or may not be correct.  You should vet all factual contentions by counsel against what you remember the evidence to be and if you remember it differently, your memory of it controls.  Please pay close attention because this is an important opportunity for counsel to explain to you what they contend has or has not been proven.

**32.**

Now we turn to the specific counts charged in this case.  A separate offense is charged in each count.  You must decide each count separately and when the count charges more than one defendant, decide separately as to each defendant.  Your verdict on one count should not control your verdict on any other count.

You are free to deliberate over the counts in any order you think most effective.  You may possibly determine that certain counts ought to be considered in light of each other and consider them out of strict numerical sequence.  To repeat, you are not required to address them in strict numerical sequence, so long as you decide all of the counts eventually.

**33.**

The indictment charges 22 counts.  Your verdict must be unanimous on each of the 22.  You will receive a special verdict form to guide and organize your answers.  The Clerk

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

will now pass out to each of you an individual working copy of the special verdict form.  I will pause for a few moments so you can scan the special verdict form.  Do not start penciling in any answers.  Please leave it totally blank until you begin deliberations.

**34.**

I will now give you specific instructions of law that you must follow in answering the questions.  I will start with Count One and go through the counts in order, but as I stated, you may deliberate over the counts in any order you think best.

**35.**

Count One charges that each defendant on trial — along with others known and unknown — knowingly and intentionally conspired with at least one other person to participate in conduct of the affairs of a racketeering enterprise — MS-13 — in violation of 18 U.S.C. 1962(d).  For simplicity, I will refer to this alleged conspiracy as the "RICO conspiracy."  RICO refers to the Racketeer-Influenced and Corrupt Organization Act found at Title 18 of the United States Code.  Section 1962(d) makes it unlawful to conspire to do certain things.

In order to prove a defendant violated 18 U.S.C. 1962(d), as charged in Count One, the government must prove all of the following elements beyond a reasonable doubt:

*First*, there was an agreement between two or more persons to participate, directly or indirectly, in the conduct of the affairs of the charged enterprise, namely MS-13, through a pattern of racketeering activity.  The terms "enterprise" and "pattern of racketeering activity" will be explained in a moment.

*Second*, the defendant knowingly and intentionally joined or became a member of the conspiracy, knowing of at least one of its objects and intending to help accomplish it.  An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident.  You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

*Third*, the defendant agreed with at least one other co-conspirator that at least two racketeering acts would be committed by a member of the conspiracy in the conduct of the

affairs of the enterprise.  The government is not required to prove that any defendant

himself committed two racketeering acts or that he agreed that he would personally commit

two racketeering acts.  The government must prove that the defendant agreed at some point

during the duration of the conspiracy to participate in the enterprise with the knowledge and

intent that at least one or more members of the conspiracy would commit at least two

racketeering acts in the conduct of the affairs of the enterprise.  You must unanimously

agree on the two or more racketeering acts he agreed would be committed.

I will now define some of these terms for you.  Unless I specify otherwise, these

definitions apply to all instances where I use the term in these instructions.

### **Conspiracy**

A conspiracy is a kind of criminal partnership — an agreement between two or more

persons to commit one or more crimes.  To be convicted of conspiracy, however, an individual

must have conspired with at least one co-conspirator.  There can be no conspiracy when the only

person with whom the defendant allegedly conspired was a government agent or informant.

The crime of conspiracy is the agreement to do something unlawful; it does not

matter whether the crime agreed upon was actually committed.  For example, if two people

agreed to rob a bank, they entered into a criminal conspiracy even if they wound up not

robbing the bank or even attempting to do so.

For an agreement, it is not necessary that the co-conspirators entered into a written,

express agreement or that they agreed upon the details of the scheme.  An informal

understanding in enough.  Nor is it necessary that all members of the conspiracy joined at

the same time.  One may join a conspiracy after it is already in progress.

One may become a member of a conspiracy without full knowledge of all the details

of the unlawful scheme or the names, identities or locations of all of the other members.

Even if someone did not directly conspire with certain other conspirators in the overall

scheme, he agreed, in effect, to participate in the conspiracy if:  (1) he directly conspired

with one or more conspirators to carry out at least one of the objects of the conspiracy; (2) he

knew or had reason to know that other conspirators were involved with those with whom he

15

**United States District Court**
For the Northern District of California

1    directly conspired; and (3) he had reason to believe that whatever benefits he might get from

2    the conspiracy were probably dependent upon the success of the entire venture.

3          It is not necessary for the government to prove that any defendants on trial expressly

4    or directly conspired with any other defendants on trial.  Nor is it necessary for the

5    government to prove that any defendant on trial was with any other defendant on trial during

6    any given incident.  It is, however, necessary for the government to prove that each

7    defendant on trial was a member of the charged conspiracy after he turned 18 years old and

8    to prove all other elements of the conspiracy charge.

9          It is not a defense that a person's participation in a conspiracy was minor or for a

10   short period of time.  One who willfully joins an existing conspiracy is as responsible for it

11   as the originators.  On the other hand, one who has no knowledge of the conspiracy but

12   happens to act in a way which furthers some object or purpose of the conspiracy, does not

13   thereby become a co-conspirator.  Similarly, a person does not become a co-conspirator

14   merely by associating with one or more persons who are conspirators, nor merely by

15   knowing that a conspiracy exists or merely being present at the scene of a transaction or

16   event related to the conspiracy.

17   **<u>Enterprise</u>**

18         The term enterprise is part of the requirement that the government prove an

19   agreement to participate in the conduct of the affairs of the charged enterprise.  What is an

20   enterprise?  An enterprise is a group of people who have associated together for a common

21   purpose of engaging in a course of conduct over a period of time.  This group need not be a

22   corporation or formal partnership or other legally recognized entity.  In addition to having a

23   common purpose, the group must have an ongoing organization, either formal or informal,

24   but no particular structure is required.  The personnel of the enterprise may change over time.

25         The government must prove that the charged enterprise itself, or the racketeering

26   activities of those associated with it, had some effect upon interstate or foreign commerce.

27   The effect may occur in any way and it need only be minimal.  This requirement is met if

28   the enterprise or its activities involved interstate or foreign communication devices (e.g.

16

telephone, internet, United States Postal Service) or the possession and use of firearms which traveled in interstate or foreign commerce.

### Pattern of Racketeering Activity

The government must also prove that the conspiracy contemplated that the enterprise would be conducted through a pattern of racketeering activity. A "pattern of racketeering activity" is at least two racketeering acts that have a relationship to each other and that amount to or pose a threat of continued criminal activity. Racketeering acts have a relationship to each other when they have the same or similar purposes, results, participants, victims, or methods of commission. Sporadic or widely separated and isolated criminal activity do not form a pattern of racketeering activity.

Note that because the charge is conspiracy, no one actually need to have actually committed a pattern of racketeering, so long as there was an agreement by two or more individuals to do so.

### Racketeering Act

The RICO statute in question defines a racketeering act to be any of a long list of certain crimes, some of which are other federal crimes and some of which are state crimes. I will now list the alleged racketeering acts alleged in this case and tell you what must be proven for each. Although this is a long list, the government need only prove two, not the entire list.

*Murder* — Murder consists of the two following elements, both of which must be proven. *First*, the accused unlawfully killed a person. *Second*, when the accused acted, he had a state of mind called malice aforethought. There are two kinds of malice aforethought: express malice aforethought and implied malice aforethought. Proof of either is sufficient to establish the state of mind required for murder. A person acts with express malice aforethought if he has a specific intent to unlawfully kill. A person acts with implied malice aforethought if: (1) the killing results from an intentional act; (2) the natural consequences of the act are dangerous to human life; and (3) the act was deliberately performed with knowledge of the danger and with conscious disregard to human life.

**United States District Court**
For the Northern District of California

Malice aforethought does not require hatred or ill will toward the victim.  It is a mental state that must be formed before committing the act that causes the victim's death.  It does not require deliberation or the passage of any particular period of time.

Even though murder is a state crime, it is incorporated into the federal RICO definition of racketeering act.

*Attempted Murder* — Attempted murder consists of the following two elements, both of which much be proven.  *First*, the accused took at least one direct but ineffective step toward killing another person.  *Second*, the accused had express malice aforethought — which I defined for you in my discussion of murder.  The direct but ineffective step must have been more than merely planning or preparing to commit murder or obtaining or arranging for something needed to commit murder — it must have indicated a certain and unambiguous intent to kill.  The act must have been an immediate step towards the commission of the killing and must have put the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt.

*Conspiracy to Commit Murder* — Conspiracy to commit murder consists of the following three elements, all of which much be proven.  *First*, the accused specifically intended to agree and did agree with one or more other people to commit murder.  *Second*, at the time of the agreement, the accused and one or more of the other alleged members of the conspiracy harbored express malice aforethought — which I previously defined for you. *Third*, an overt act was committed by one or more of the persons who agreed and intended to commit murder.  An "overt act" is an act by one or more of the members of the conspiracy that is done to help accomplish the agreed upon crime.  The overt act must happen after the accused has agreed to commit the crime.  The overt act must be more than the act of agreeing or planning to commit the crime, but it does not have to be a criminal act itself.

*Solicitation of Murder* — Solicitation of murder consists of the following three elements, all of which much be proven.  *First*, the accused requested another person to commit or join in the commission of the crime of murder.  *Second*, the accused specifically intended that the crime of murder be committed.  *Third*, the soliciting message was received

by the intended recipient.

*Robbery* — Robbery consists of the following five elements, all of which must be proven. *First*, the accused took property that was not his or her own. *Second*, the property was taken from another person's possession and immediate presence. *Third*, the property was taken against that person's will. *Fourth*, the accused used force or fear to take possession of the property or maintain possession of the property. *Fifth*, when the accused took the property, he or she specifically intended to permanently deprive the property from the person it was taken from. The accused's intent to take the property must have been formed before or during the time that he or she used force or fear. If the accused did not form this required intent until after using the force or fear, then he or she did not commit robbery.

*Attempted Robbery* — Attempted robbery consists of the following two elements, both of which must be proven. *First*, the accused took a direct but ineffective step toward committing robbery. *Second*, the accused specifically intended to commit robbery. I previously defined "direct but ineffective step" for you in my definition of attempted murder.

*Conspiracy to Commit Robbery* — Conspiracy to commit robbery consists of the following three elements, all of which must be proven. *First*, the person specifically intended to agree and did agree with one or more other persons to commit robbery. *Second*, at the time of the agreement, the accused and one or more other alleged members of the conspiracy specifically intended that one or more of them would commit robbery. *Third*, one or more members of the conspiracy committed an overt act to accomplish the robbery. I previously defined "overt act" for you in my definition of conspiracy to commit murder.

*Extortion* — Extortion consists of the following four elements, all of which must be proven. *First*, the accused obtained money or property from the alleged victim. *Second*, the money or property was obtained with the consent of the alleged victim. *Third*, the alleged victim's consent was induced by the wrongful use of force or fear. *Fourth*, the accused used force or fear with the specific intent to induce the alleged victim to consent to give up his or her money or property. The term consent has a special meaning here. Consent for extortion

**United States District Court**
For the Northern District of California

1   can be coerced or unwilling, as long as it was given as a result of the wrongful use of force

2   or fear.  The threat or use of force must be the controlling reason that the other person

3   consented.  If the other person consented because of some other controlling reason, the

4   accused is not guilty of extortion.  The threat may involve harm to be inflicted by the

5   accused or by someone else.

6       *Attempted Extortion* — Attempted extortion consists of the following two elements,

7   both of which must be proven.  *First*, the accused took a direct but ineffective step toward

8   committing extortion.  *Second*, the accused specifically intended to commit extortion.

9       Again, as with murder, all of the foregoing state crimes are incorporated into the

10  federal RICO statute as racketeering acts.  Now I will tell you about other federal offenses

11  that qualify as racketeering acts under the RICO statute.

12      *Possession with Intent to Distribute Controlled Substance* — Possession with intent to

13  distribute a controlled substance consists of the following two elements, both of which must be

14  proven.  *First*, the accused knowingly possessed the controlled substance.  *Second*, the accused

15  possessed it with the intent to deliver it to another person.

16      *Narcotics Conspiracy* — The crime of conspiracy to distribute or to possess with intent

17  to distribute a controlled substance consists of the following three elements, all of which must

18  be proven.  *First*, there was an agreement between two or more persons either to distribute a

19  controlled substance or to possess a controlled substance with the intent to distribute it.  *Second*,

20  the accused knew the agreement had an unlawful object or purpose.  *Third*, the accused joined

21  in the agreement intending to deliver or transfer possession to another person.

22      *Witness Retaliation and Tampering* — There are two ways to prove witness retaliation

23  and tampering.  Both consist of two elements which must be proven.  One way to prove witness

24  retaliation is to demonstrate the following elements.  *First*, the accused killed or attempted to

25  kill another person.  *Second*, the accused did so with the intent to do one of the following:

26  (a) prevent the attendance or testimony of another person in an official proceeding; (b) prevent

27  the production of a record, document or other object in an official proceeding; or (c) prevent

28  the communication by any person to a law enforcement officer or judge of the United States of

20

**United States District Court**
For the Northern District of California

information relating to the commission or possible commission of a federal offense or a violation of conditions of probation, parole or release pending judicial proceedings.

Alternatively, the following elements could be shown. *First*, the accused used physical force or the threat of physical force against another person, or attempted to do so. *Second*, the person did so to: (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce another person to:  (a) withhold testimony or withhold a record, document, or other object from an official proceeding; (b) alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding; or (c) be absent from an official proceeding to which that person has been summoned by legal process; or (3) hinder, delay or prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense or a violation of conditions of probation, parole or release pending judicial proceedings.

*Obstruction of Justice* — Obstruction of justice consists of the following two elements, both of which must be proven. *First*, the accused influenced, obstructed, or impeded, or tried to influence, obstruct, or impede the due administration of justice. *Second*, the accused acted corruptly, or by threats or force, or by any threatening communication, with the intent to obstruct justice.

This concludes the list of alleged racketeering acts.  Remember that the government must prove that the conspiracy was to conduct the affairs of an enterprise through a pattern of racketeering activity, including at least two of the foregoing list of alleged racketeering acts.

After your deliberation on Count One, you must enter your unanimous verdict under Question 1A on the special verdict form.  You will do the same for all other counts — enter your unanimous verdict for each count under the question that corresponds to that count.

**36.**

If you find any defendant guilty of the RICO conspiracy in violation of 18 U.S.C. 1962(d), you must then determine whether certain offenses were part of the pattern of racketeering activity that the defendant agreed would be committed in furtherance of the

United States District Court

For the Northern District of California

conspiracy and fill out Question 1B on the special verdict form accordingly. These offenses are: (1) murder, regardless of degree; (2) attempted murder; and (3) conspiracy to commit murder. The elements of these offenses were just provided to you. You must determine whether each defendant knowingly agreed that any of these three offenses would be part of the activity taken in furtherance of the RICO conspiracy charged in Count One. Your decision must be unanimous and beyond a reasonable doubt.

**37.**

Turning to Count Two, it is another conspiracy charge against all defendants but charges a different type of conspiracy. Count Two charges that all defendants on trial — along with others known and unknown — knowingly and intentionally conspired with one another to commit murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(5). Specifically, the indictment alleges that the defendants agreed to kill actual and suspected Norteños, actual and suspected members of other gangs, and individuals suspected of cooperating with law enforcement, in order to increase their standing within the alleged enterprise.

In order to prove a defendant violated 18 U.S.C. 1959(a)(5), the government must prove the following elements beyond a reasonable doubt.

*First*, an enterprise affecting interstate or foreign commerce existed. The government has alleged MS-13 was an enterprise. The requirements to prove an enterprise were previously explained to you in my discussion of Count One.

*Second*, the enterprise engaged in racketeering activity. Racketeering activity was previously defined for you in my discussion of Count One.

*Third*, each defendant conspired to commit murder. The elements the government must prove beyond a reasonable doubt to establish a conspiracy to commit murder were previously explained to you in my discussion of Count One and the alleged racketeering acts.

*Fourth*, each defendant's purpose in conspiring to commit murder was to gain entrance to, or to maintain his position or to increase his position in the enterprise. It is not necessary for the government to prove that this motive was the sole purpose, or even the primary purpose of the defendant in committing the charged crime. You need only find that

1    enhancing his status in MS-13 was a substantial purpose of the defendant or that he

2    committed the charged crime as an integral aspect of membership in MS-13.  An incidental

3    motivation, however, is not enough.

4        In determining the defendant's purpose in committing the alleged crime, you must

5    determine what he had in mind.  Since you cannot look into a person's mind, you have to

6    determine purpose by considering all the facts and circumstances before you.

7                                   **38.**

8        Turning to Count Three, it is yet another conspiracy charge.  Count Three charges

9    that all defendants on trial — along with others known and unknown — knowingly and

10   intentionally conspired with one another to commit assault with a dangerous weapon in aid

11   of racketeering in violation of 18 U.S.C. 1959(a)(6).  Specifically, the indictment alleges

12   that the defendants agreed to attack with firearms, knives and other dangerous weapons

13   actual and suspected Norteños, actual and suspected members of other gangs and

14   individuals suspected of cooperating with law enforcement, in order to increase their

15   standing within the alleged enterprise.

16       In order to prove a defendant violated 18 U.S.C. 1959(a)(6), the government must

17   prove the following elements beyond a reasonable doubt.

18       *First*, an enterprise affecting interstate commerce existed.  The government has

19   alleged MS-13 was an enterprise.  The requirements to prove an enterprise were previously

20   explained to you in my discussion of Count One.

21       *Second*, the enterprise engaged in racketeering activity.  Racketeering activity was

22   previously defined for you in my discussion of Count One.

23       *Third*, each defendant conspired to commit assault with a dangerous weapon.  In order

24   to prove conspiracy to commit assault with a dangerous weapon, the government must show

25   that an individual specifically intended to agree and did agree with one or more other people

26   to intentionally and unlawfully commit assault with a dangerous weapon, and that an overt act

27   was committed by one or more persons who agreed and intended to commit the assault.

28       *Fourth*, each defendant's purpose in conspiring to commit assault with a dangerous

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    weapon was to gain entrance to, or to maintain his position or to increase his position in the

2    enterprise.  As stated before, it is not necessary for the government to prove that this motive

3    was the sole purpose, or even the primary purpose of the defendant in committing the

4    charged crime.  You need only find that enhancing his status in MS-13 was a substantial

5    purpose of the defendant or that he committed the charged crime as an integral aspect of

6    membership in MS-13.  An incidental motivation, however, is not enough.

7         In determining the defendant's purpose in committing the alleged crime, you must

8    determine what he had in mind.  Since you cannot look into a person's mind, you have to

9    determine purpose by considering all the facts and circumstances before you.

10        I previously provided you with the definition of overt act in my discussion of the

11   alleged racketeering acts.  I have not yet provided you with a definition of assault with a

12   dangerous weapon.  Assault with a dangerous weapon consists of the following elements.

13   *First*, the accused willfully did an act with a dangerous weapon that by its nature would

14   directly and probably result in the application of force to a person.  Someone commits an act

15   "willfully" when he does it willingly or on purpose.  It is not required that he intend to break

16   the law, hurt someone else, or gain any advantage.  *Second*, when the accused acted, he was

17   aware of facts that would lead a reasonable person to realize that his act by its nature would

18   directly and probably result in the application of force to someone.  *Third*, when the accused

19   acted, he had the present ability to apply force with a dangerous weapon to a person.

**39.**

21        Count Four charges defendants Marvin Carcamo, Angel Noel Guevara, Moris

22   Flores, and Walter Cruz-Zavala with using and carrying, and possessing a firearm in

23   furtherance of crimes of violence in violation of 18 U.S.C. 924(c).  This code section — 18

24   U.S.C. 924(c) — also forms the basis for later counts.  The crimes of violence alleged in this

25   count are:  RICO conspiracy in violation of 18 U.S.C. 1962(d), as charged in Count One;

26   conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(5), as

27   charged in Count Two; and conspiracy to commit assault with a dangerous weapon in aid of

28   racketeering in violation of 18 U.S.C. 1959(a)(6), as charged in Count Three.  Although the

indictment alleges that the defendants used, carried, and possessed firearms, it would be sufficient for the prosecution to prove possession only.

In order for any defendant to be found guilty of Count Four, the government must prove the following beyond a reasonable doubt:

*First*, the defendant committed at least one of the crimes charged in Counts One, Two or Three — all of which I instruct you are crimes of violence within the meaning of the law.  You must all agree on which crime or crimes the defendant committed (if any).

*Second*, the defendant knowingly possessed a firearm.  An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

*Third*, the defendant possessed the firearm in furtherance of the crime charged in Count One, Two, or Three that you agreed the defendant committed.

A person "possessed a firearm" if the person knew of its presence and had physical control over it, or knew of its presence and had the power and intention to control it.

**40.**

Count Five charges defendant Erick Lopez with murdering Ernad Joldic in aid of racketeering in violation of 18 U.S.C. 1959(a)(1).  In order for defendant Lopez to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

*First*, a criminal organization existed.

*Second*, the organization was an enterprise engaged in racketeering activity. Racketeering activity was previously defined for you in my discussion of Count One.

*Third*, defendant Lopez committed the violent crime of murdering Ernad Joldic. The elements the government must prove beyond a reasonable doubt to establish murder were previously explained to you in my discussion of Count One and the alleged racketeering acts.

*Fourth*, that defendant Lopez's purpose was to gain entrance to, or to maintain his

United States District Court

For the Northern District of California

1  position or to increase his position in the enterprise.  As I previously explained, it is not

2  necessary for the government to prove that this motive was the sole purpose, or even the

3  primary purpose of the defendant in committing the charged crime.  You need only find that

4  enhancing his status in MS-13 was a substantial purpose or that he committed the charged

5  crime as an integral aspect of his membership in MS-13.  An incidental motivation,

6  however, is not enough.

7      In determining the defendant's purpose in committing the alleged crime, you must

8  determine what he had in mind.  Since you cannot look into a person's mind, you have to

9  determine purpose by considering all the facts and circumstances before you.

10                                            **41.**

11      Count Six charges defendant Erick Lopez with murdering Phillip Ng in aid of

12  racketeering in violation of 18 U.S.C. 1959(a)(1).  I just told you the required elements of

13  proof for a violation of 18 U.S.C. 1959(a)(1) with respect to Count Five.  In order for

14  defendant Lopez to be found guilty of Count Six, the government must prove beyond a

15  reasonable doubt each of the elements I previously discussed.  The victim at issue for this

16  count, however, is Phillip Ng rather than Ernad Joldic.

17                                            **42.**

18      Count Seven charges defendant Erick Lopez with using and carrying, and possessing

19  a firearm in furtherance of crimes of violence resulting in the murders of Ernad Joldic and

20  Phillip Ng in violation of 18 U.S.C. 924(j)(1).  Although the indictment alleges that

21  defendant Lopez used, carried, and possessed a firearm, it would be sufficient for the

22  prosecution to prove possession only.

23      The required elements of proof for this count are similar to the required elements of

24  proof for violations of 18 U.S.C. 924(c) — which I described to you earlier in my discussion

25  of Count Four — but they are not identical.  In order for defendant Lopez to be found guilty

26  of Count Seven, the government must prove the following beyond a reasonable doubt:

27      *First*, defendant Lopez committed either the murder of Ernad Joldic or Phillip Ng

28  charged in Counts Five and Six — which I instruct you were crimes of violence within the

26

meaning of the law.

*Second*, defendant Lopez knowingly possessed a firearm.  An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

*Third*, defendant Lopez possessed the firearm in furtherance of the murder(s).

*Fourth*, the use of the firearm resulted in the death of Ernad Joldic or Phillip Ng, which was the result of an unlawful killing done with malice aforethought.

As I previously instructed you, a person "possessed a firearm" if the person knew of its presence and had physical control over it, or knew of its presence and had the power and intention to control it.

**43.**

Count Eight charges defendant Erick Lopez with using and carrying, and possessing a firearm in furtherance of the murders of Ernad Joldic and/or Phillip Ng in violation of 18 U.S.C. 924(c).  Although the indictment alleges that defendant Lopez used, carried, and possessed a firearm, it would be sufficient for the prosecution to prove possession only. This is the same federal statute that forms the basis for Count Four.  I have already told you the required elements of proof for violations of the statute in my discussion of Count Four. The same required elements of proof must be proven beyond a reasonable doubt for this count.  The crimes at issue in this count, however, are the murders of Ernad Joldic and Phillip Ng — which I instruct you were crimes of violence within the meaning of the law — and the defendant charged is defendant Lopez.

**44.**

Count Nine charges defendant Erick Lopez with using and carrying, and possessing a firearm in furtherance of crimes of violence on or about March 30, 2008, again in alleged violation of 18 U.S.C. 924(c).  For this count, the crimes of violence alleged are:  RICO conspiracy in violation of 18 U.S.C. 1962(d), as charged in Count One; conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(5), as charged in

United States District Court

For the Northern District of California

1   Count Two; and conspiracy to commit assault with a dangerous weapon in aid of

2   racketeering in violation of 18 U.S.C. 1959(a)(6), as charged in Count Three.  Although the

3   indictment alleges that defendant Lopez used, carried, and possessed firearms, it would be

4   sufficient for the prosecution to prove possession only.

5          This is the same federal statute that forms the basis for Count Four.  I have already

6   told you the required elements of proof for violations of the statute in my discussion of

7   Count Four.  The same required elements of proof must be proven beyond a reasonable

8   doubt for this count but with respect to defendant Lopez and a crime occurring on or about

9   March 30, 2008, as charged in Counts One to Three.  I instruct you that a violation of

10   Counts One, Two, or Three is a crime of violence within the meaning of the law.

11                                          **45.**

12         Count Ten charges defendant Jonathan Cruz-Ramirez with murdering Juan

13   Rodriguez in aid of racketeering in violation of 18 U.S.C. 1959(a)(1).  This is the same

14   federal statute that forms the basis for Count Five.  I previously explained the required

15   elements of proof for this federal statute to you in my discussion of Count Five.  The same

16   required elements of proof must be proven beyond a reasonable doubt for this count but

17   with respect to a different defendant and a different alleged murder.

18                                          **46.**

19         Count Twelve charges defendant Jonathan Cruz-Ramirez with using and carrying,

20   and possessing a firearm in furtherance of crime of violence resulting in the murder of Juan

21   Rodriguez in violation of 18 U.S.C. 924(j)(1).  Although the indictment alleges that

22   Defendant Cruz-Ramirez used, carried, and possessed a firearm, it would be sufficient for

23   the prosecution to prove possession only.  For purposes of your deliberation on this count, I

24   instruct you that the murder of Juan Rodriguez was a crime of violence within the meaning

25   of the law.

26         Section 924(j)(1) is the same statute that formed the basis for other counts I have

27   discussed with you.  The required elements of proof are the same as described to you in

28   Count Seven except the alleged crime of violence is the murder of Juan Rodriguez and the

1    defendant charged is defendant Cruz-Ramirez.

2                                    **47.**

3          Count Thirteen charges defendants Jonathan Cruz-Ramirez and Guillermo Herrera

4    with murdering Armando Estrada in aid of racketeering, in violation of 18 U.S.C. 1959(a)(1).

5    This is the same federal statute that forms the basis for Count Five and the same required

6    elements of proof as established in Count Five must be proven beyond a reasonable doubt but

7    with respect to defendants Cruz-Ramirez and Herrera for the murder of Armando Estrada.

8                                    **48.**

9          Count Fourteen charges defendants Jonathan Cruz-Ramirez and Guillermo Herrera

10   with using and carrying, and possessing a firearm in furtherance of a crime of violence

11   resulting in the murder of Armando Estrada in violation of 18 U.S.C. 924(j)(1).  Although the

12   indictment alleges that defendants Cruz-Ramirez and Herrera used, carried, and possessed

13   firearms, it would be sufficient for the prosecution to prove possession only.  For purposes of

14   your deliberation on this count, I am instructing you that the murder of Armando Estrada was

15   a crime of violence within the meaning of the law.

16         Section 924(j)(1) is the same statute that formed the basis for Count Seven.  The

17   required elements of proof are the same except the alleged crime of violence is the murder of

18   Armando Estrada and the defendants charged are defendants Cruz-Ramirez and Herrera.

19                                   **49.**

20         Count Fifteen charges defendants Jonathan Cruz-Ramirez and Guillermo Herrera

21   with using and carrying, and possessing a firearm in furtherance of the murder of Armando

22   Estrada, in violation of 18 U.S.C. 924(c).  Although the indictment alleges that defendants

23   Cruz-Ramirez and Herrera used, carried, and possessed firearms, it would be sufficient for

24   the prosecution to prove possession only.  For purposes of your deliberation on this count, I

25   am instructing you that the murder of Armando Estrada was a crime of violence.

26         This is the same federal statute that forms the basis for Count Four.  I have already

27   told you the required elements of proof for violations of the statute with respect to Count

28   Four.  The same required elements of proof must be proven beyond a reasonable doubt for

**United States District Court**
For the Northern District of California

1   this count but with respect to defendants Cruz-Ramirez and Herrera for the murder of

2   Armando Estrada.

**50.**

4       Count Sixteen charges defendant Cruz-Ramirez with using and carrying, and

5   possessing a firearm in furtherance of crimes of violence on or about July 25, 2008, in

6   violation of 18 U.S.C. 924(c). The crimes of violence are: RICO conspiracy in violation of

7   18 U.S.C. 1962(d), as charged in Count One; conspiracy to commit murder in aid of

8   racketeering in violation of 18 U.S.C. 1959(a)(5), as charged in Count Two; and conspiracy

9   to commit assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C.

10  1959(a)(6), as charged in Count Three. Although the indictment alleges that defendant Cruz-

11  Ramirez used, carried, and possessed firearms, it would be sufficient for the prosecution to

12  prove possession only.

13      This is the same federal statute that forms the basis for Count Four with respect to

14  other defendants, but this count pertains to defendant Cruz-Ramirez and a crime occurring on

15  or about July 25, 2008, as charged in Counts One to Three. I instruct you that a violation of

16  Counts One, Two, or Three is a crime of violence within the meaning of the law. I have

17  already told you the required elements of proof for violations of 18 U.S.C. 924(c) in my

18  discussion of Count Four. These same elements must be proven beyond a reasonable doubt

19  for this count.

**51.**

21      We will now skip to Count Twenty-Five. The Counts between Count Sixteen and

22  Twenty-Five are not part of this trial.

**52.**

24      Count Twenty-Five charges defendant Angel Noel Guevara with assaulting Jesus

25  Reynoso with a dangerous weapon in aid of racketeering in violation 18 U.S.C. 1959(a)(3).

26  In order for defendant Guevara to be found guilty of that charge, the government must prove

27  each of the following elements beyond a reasonable doubt.

28      *First*, a criminal organization existed.

United States District Court

For the Northern District of California

*Second*, the organization was an enterprise engaged in racketeering activity. Racketeering activity was previously defined for you in my discussion of Count One.

*Third*, defendant Guevara committed the violent crime of assault with a dangerous weapon.  I previously defined assault with a dangerous weapon for you in my discussion of Count Three.

*Fourth*, defendant Guevara's purpose was to gain entrance to, or to maintain his position or to increase his position in the enterprise.  It is not necessary for the government to prove that this motive was the sole purpose, or even the primary purpose of defendant Guevara in committing the charged crime.  You need only find that enhancing his status in MS-13 was a substantial purpose or that he committed the charged crime as an integral aspect of membership in MS-13.  An incidental motivation, however, is not enough.

In determining defendant Guevara's purpose in committing the alleged crime, you must determine what he had in mind.  Since you cannot look into a person's mind, you have to determine purpose by considering all the facts and circumstances before you.

**53.**

Count Twenty-Six charges defendant Angel Noel Guevara with attempting to murder Jesus Reynoso in aid of racketeering in violation of 18 U.S.C. 1959(a)(5).  In order for defendant Guevara to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt.

*First*, a criminal organization existed.

*Second*, the organization was an enterprise engaged in racketeering activity. Racketeering activity was previously defined for you in my discussion of Count One.

*Third*, defendant Guevara committed attempted murder.  The elements the government must prove beyond a reasonable doubt to establish attempted murder were previously explained to you in my discussion of Count One.

*Fourth*, defendant Guevara's purpose was to gain entrance to, or to maintain his position or to increase his position in the enterprise.  It is not necessary for the government to prove that this motive was the sole purpose, or even the primary purpose of defendant

United States District Court

For the Northern District of California

1    Guevara in committing the charged crime.  You need only find that enhancing his status in

2    MS-13 was a substantial purpose or that he committed the charged crime as an integral

3    aspect of membership in MS-13.  An incidental motivation, however, is not enough.

4           In determining defendant Guevara's purpose in committing the alleged crime, you

5    must determine what he had in mind.  Since you cannot look into a person's mind, you have

6    to determine purpose by considering all the facts and circumstances before you.

**54.**

8           Count Twenty-Seven charges defendant Angel Noel Guevara with assaulting

9    Milagro Moraga with a dangerous weapon in aid of racketeering in violation of 18 U.S.C.

10   1959(a)(3).  In order for defendant Guevara to be found guilty of this count, the government

11   must prove each of the following elements beyond a reasonable doubt.  The required

12   elements of proof for this count are identical to those for Count Twenty-Five except this

13   count involves a different victim — Milagro Moraga.

**55.**

15          Count Twenty-Eight charges defendant Angel Noel Guevara with attempting to

16   murder Milagro Moraga in aid of racketeering in violation of 18 U.S.C. 1959(a)(5).  The

17   required elements of proof for this count are identical to those for Count Twenty-Six except

18   this count involves a different victim — Milagro Moraga.

**56.**

20          Count Twenty-Nine charges defendant Angel Noel Guevara with assaulting Ronald

21   Donaire with a dangerous weapon in aid of racketeering in violation of 18 U.S.C.

22   1959(a)(3).  The required elements of proof for this count are identical to those for Count

23   Twenty-Five except this count involves a different victim — Ronald Donaire.

**57.**

25          Count Thirty charges defendant Angel Noel Guevara with attempting to murder

26   Ronald Donaire in aid of racketeering, in violation of 18 U.S.C. 1959(a)(5).  The required

27   elements of proof for this count are identical to those for Count Twenty-Six except this

28   count involves a different victim — Ronald Donaire.

**58.**

Now I will provide you with more general instructions that apply more broadly to all or at least some of the counts.

**59.**

I will start with aiding and abetting. A defendant may also be found guilty of any of the non-conspiracy counts even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To prove a defendant guilty of aiding and abetting, the government must prove beyond a reasonable doubt:

*First*, the crime in question was committed by someone;

*Second*, the defendant knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit each element of the crime; and

*Third*, the defendant acted before the crime was completed. It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit the underlying crime.

The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.

**60.**

It is not a per se crime to be a member of a gang. Rather, as I have already described, the crimes charged in this case concern conspiracy and/or murder in aid of racketeering and other federal crimes. In deciding whether the government has proven the required elements of the federal offenses charged, you may consider the fact of gang membership, if proven, and give it such weight as you think it deserves in deciding whether the required elements have been proven for the offenses charged.

**61.**

Events that occurred before a conspirator joined a conspiracy may be considered by you to prove the nature and scope of the conspiracy joined later.

**United States District Court**
For the Northern District of California

**62.**

As you recall, some of the events and statements described by the evidence occurred while at least some of the defendants were under 18 years old and still juveniles.  This has been referred to at times as "pre-majority acts" or "pre-majority conduct."  You must follow my prior instruction regarding how the age of 18 affects this case and your evaluation of the evidence.  To refresh your memory, I will repeat my prior instruction.

As to any count, the United States must prove beyond a reasonable doubt a defendant charged in the count committed the crime after he turned 18, that is, it must prove all elements of the crime as of or after the defendant's 18th birthday.  Does this, however, mean that events and conduct before the 18th birthday must be ignored?  No, such evidence may be considered by you for certain purposes.  You may consider such evidence insofar as, in your judgment, it sheds light on what the defendant knew and understood *after* he turned 18.  This might, for example, be relevant to the questions of intent versus mistake or knowledge versus ignorance.  Another way you may consider such evidence concerns the conspiracy counts.  You may consider evidence occurring before age 18 in ascertaining the scope and nature of any alleged conspiracy.  Again, a defendant may not be held criminally liable for an alleged conspiracy occurring before he turned 18, but he may be held liable for continuing in a conspiracy after he turned 18 and you may consider the earlier evidence to evaluate the nature and scope of an alleged conspiracy after age 18, so long as all elements of the conspiracy are proven to have existed after his 18th birthday.  This includes not only conduct by the defendant but also conduct by any others you may find were shown to have been in an alleged conspiracy.  In short, you may not convict a defendant unless the government proves all elements of a charged offense occurred after the age of 18, but evidence of events before age 18 may be considered by you in evaluating whether the government has carried its burden of proof.

**63.**

Similarly, you have heard testimony that various defendants were in custody at the time of certain homicides and other events.  Of course, if someone was in jail, that person

**United States District Court**
For the Northern District of California

1   could not have been present at the scene of a homicide or other event outside of the jail.  I

2   instruct you, however, that being in custody does not automatically mean the person in

3   custody cannot be held responsible for acts committed outside the jail.  If the government

4   proves all required elements of a crime against a given defendant, then the fact that the

5   defendant was in custody would not excuse the crime.  In deciding whether all elements

6   have been proven, you may consider the circumstance that a defendant was in custody at the

7   time of the key events.

8                                            **64.**

9        [If entrapment instruction is to be given, it will be inserted here (*see* Dkt. No. 4781).]

10                                           **65.**

11       Evidence has been admitted that defendant Erick Lopez may have suffered from

12  diminished mental capacity in August/September 2005.  Whether he actually did or did not

13  or the actual extent thereof is for you to decide.

14       You may consider all evidence bearing on the issue of defendant Lopez's mental

15  capacity in deciding whether the government proved beyond a reasonable doubt that

16  defendant Lopez acted with the intent required to join the conspiracies alleged in Counts

17  One, Two, and Three.

18                                           **66.**

19       The punishment provided by law for the alleged crimes is for the Court to decide, if

20  a guilty verdict is returned.  You may not consider punishment in deciding whether the

21  government has proven its case against any defendant beyond a reasonable doubt.

22  Punishment is an entirely separate matter not relevant here and on which you should not

23  speculate or base your decision in any way.

24                                           **67.**

25       When you begin your deliberations, you should elect one member of the jury as your

26  foreperson.  That person will preside over the deliberations and speak for you here in court.

27  I recommend that you select a foreperson who will be good at leading a fair and balanced

28  discussion of the evidence and the issues.

United States District Court

For the Northern District of California

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict as to each count, if any, must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**68.**

Most, if not all, of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by your notes. When you go into the jury room, the Clerk will bring you the trial exhibits received into evidence to be available for your deliberations. The Clerk will also provide you with an index to the exhibits.

**69.**

When you retire to the jury room to deliberate, you will have with you the following things:

      1.     All of the exhibits received into evidence;

      2.     An index to the exhibits;

      3.     A work copy of these jury instructions for each of you;

      4.     A work copy of the verdict form for each of you; and

      5.     An official verdict form.

When you recess at the end of a day, please place your work materials in the brown envelope provided and cover up any easels with your work notes so that if my staff needs to go into the jury room, they will not inadvertently see any of your work in progress.

**70.**

The admitted exhibits will be placed in the jury room during your deliberations with

the exception of the firearms.  If you wish to examine the firearms, please send out a note and we will make arrangements for you to do so.

**71.**

As I said, you will have the exhibits in the jury room.  Most of the exhibits were displayed on the Elmo and some witnesses used the computer graphics feature to draw lines, arrows, X's and so forth.  Those graphic drawings are not in evidence but most were preserved and if you wish to see any of those graphics again, you may request to reconvene in the courtroom to re-view a graphic, assuming it was preserved.

**72.**

In your deliberations it is usually a mistake to take a straw vote early on.  This is due to the risk of jury members expressing a premature opinion and then, out of pride, digging in their heels.  Rather, it is usually better to discuss the evidence, pro and con, on the various issues before proceeding to take even a straw vote.  In this way, all the viewpoints will be on the table before anyone expresses a vote.  These are merely recommendations, however, and it is up to you to decide on how you wish to deliberate.

A United States Marshal will be outside the jury-room door during your deliberations.  If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, on the question of the innocence or guilt of the defendants, until after you have reached a unanimous verdict or have been discharged.

**73.**

You have been required to be here each day from 7:45 a.m. to 1:00 p.m.  Now that

United States District Court
For the Northern District of California

you are going to begin your deliberations, however, you are free to modify this schedule within reason.  For example, if you wish to continue deliberating in the afternoons after a reasonable lunch break, that is fine.  The Court does, however, recommend that you continue to start your deliberations by 8:00 a.m.  If you do not reach a verdict by the end of today, then you will resume your deliberations tomorrow and thereafter.

It is very important that you let the Clerk know in advance what hours you will be deliberating so that the lawyers may be present in the courthouse at any time the jury is deliberating.

**74.**

You may only deliberate when all twelve of you are together.  This means, for instance, that in the mornings before everyone has arrived or when someone steps out of the jury room to go to the restroom, you may not discuss the case.  As well, the admonition that you are not to speak to anyone outside the jury room about this case still applies during your deliberations.

**75.**

Some of you are serving as alternate jurors.  As such, you will not be deliberating with the rest of the jury at the outset.  You will leave before the jury begins its deliberations.  You may, however, be called in to replace one of the jurors.  Your responsibilities as an alternate therefore remain in effect.  This means you are not to discuss this case with anyone until you join the regular jury in deliberations or until a verdict is returned and I expressly release you from service.  If it becomes necessary to have you replace a juror, you will be asked to return to the court.  You will then be sworn into the main jury and you and the rest of the jury will begin deliberations anew.  If you will not be needed, you will be notified as soon as the Court itself makes that determination.

Sometimes alternate jurors are tempted to tell the main twelve jurors how they feel about the case before they leave and sometimes the main twelve jurors are tempted to seek the input of the alternates before the alternates leave.  No, you must not do this.  The twelve jurors may not receive or consider the views of the alternates unless and until, if ever, one or

1   more alternates are sworn into the main jury.

2                                        **76.**

3          If and when you have reached a unanimous agreement on a verdict, your foreperson

4   will fill in, date and sign the master copy of the verdict form and advise the Court through

5   the marshal that you have reached a verdict.  The foreperson should hold onto the filled-in

6   verdict form and bring it into the courtroom when the jury returns the verdict.

7          I am about to ask all of you to return to the jury room.  Our alternate jurors should

8   first proceed to the jury room and retrieve their personal items and return to work or home,

9   as the case may be.  As soon as they have done so, the marshal will then escort the

10  remaining twelve jurors to the jury room.  Please do not begin your deliberations until all

11  twelve of you are in the jury room together and the alternate jurors have left.  The Clerk will

12  bring the trial exhibits into the jury room.  Thank you all for your careful attention.  The

13  case is now in your hands.  You may now retire to the jury room and begin your

14  deliberations.

15

16  Dated:  July 21, 2011.                                    [DRAFT]
                                              _____
17                                            WILLIAM ALSUP
                                              UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California