IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION RE REJECTION OF LATE-PROPOSED *PINKERTON* INSTRUCTION** |
| MARVIN CARCAMO, *et al.*, | |
| Defendants. | |

*Pinkerton v. United States*, 328 U.S. 640 (1946), was a simple two-brother tax-evasion conspiracy-plus-substantive counts case. Both brothers were convicted on all counts — both substantive and conspiracy. One brother was proven to have committed the substantive offenses. For the other brother, vicarious liability on the substantive offenses was upheld because the offenses had been entirely foreseeable as within the contemplation of the conspiracy.

In contrast, the instant five-month MS-13 gang trial is more complicated. Here, seven defendants are facing three different conspiracy counts and nineteen substantive counts. Some of the counts are interlocking, meaning one depends upon the other. The alleged conspiracies in the instant case were not aimed simply at committing the substantive offenses but were wider or narrower in scope depending on how the jury views the evidence. The alleged street gang had many dozen "homies," who may have been in some but not all of the conspiracies charged.

Evidence has been presented from which the jury could reasonably find that, as to most if not all of the nineteen substantive counts, the charged defendant in fact did the act charged. The *Pinkerton* issue does not implicate this straightforward method of proof in any way. The *Pinkerton* instruction can only matter in the contingency that the charged defendant is *not* found to have himself done the substantive offense.

At 12:34 a.m. on the day of the third and final charging conference, the government submitted a proposed *Pinkerton* instruction. This was the first and only *Pinkerton* instruction submitted by the government other than a place-holder with uncompleted blanks drawn from the model instructions. As finalized, the proposal had sweeping scope. Rather than zeroing in on a specific substantive count, as contemplated by the model instruction, the proposal was universal in scope. It would have applied generically to all nineteen substantive counts.

The requested charge was as follows (with passages of particular interest italicized):

> Each member of a conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of the conspiracy, the other members have also, under the law, committed that crime, *even if they did [not] personally participate in the acts constituting the crime or even if they did not have knowledge about that crime*.[1]
>
> All seven defendants in this case are charged in the RICO conspiracy in Count One. For Counts Four through Sixteen and Twenty-Five through Thirty — which are all non-conspiracy, substantive offenses — you may find the defendant or defendants charged in these crimes guilty *even if you find they did not personally commit the crime or even if they lacked knowledge of them* if the Government proves beyond a reasonable doubt the following five elements:
>
> *First*, that a person — *not necessar[il]y a defendant in this case* — committed the substantive offense under consideration.
>
> *Second*, the person who committed the substantive offense was a member of the RICO conspiracy charged in Count One.
>
> *Third*, the person who committed the substantive offense committed it in furtherance of the RICO conspiracy.

---

[1] The Court presumes that the word "not" was inadvertently omitted; otherwise, the second paragraph would be inconsistent.

2

> *Fourth*, the defendant under consideration was a member of the RICO conspiracy at the time the substantive offense was committed.
>
> *Fifth*, the substantive offense fell within the scope of the RICO conspiracy and could reasonably have been foreseen to be a necessary or natural consequence of the RICO conspiracy.

Note well that even if proof were wanting as to a defendant charged with a substantive offense, the instruction would permit his conviction anyway in the event that the jury were to find that the crime must have been done by a RICO co-conspirator, whether or not such perpetrator could be identified. For example, if defendant Angel Noel Guevara did not do the December 2007 stabbings, he could nonetheless be convicted on those substantive counts on the theory that some other RICO co-conspirator must have done the stabbings. Yet, unlike in *Pinkerton*, here there is no proof of who that would have been. *See United States v. Heredia*, 483 F.3d 913, 924 (9th Cir. 2007) (explaining that whether an instruction should be given first depends on the theories and evidence presented at trial); *United States v. Castaneda*, 9 F.3d 761, 766 (9th Cir. 1993) (" . . . due process constrains the application of *Pinkerton* where the relationship between the defendant and the substantive offense is slight.")

To take another example, the multiple firearms counts alleged under Section 924 would become problematic. Count Four charges defendants Marvin Carcamo, Angel Noel Guevara, Moris Flores and Walter Cruz-Zavala with possessing a firearm in furtherance of one or more of the conspiracies alleged in Counts One, Two and Three. If the government fails to prove that defendant Angel Noel Guevara himself, for example, possessed a firearm, it would fall back on the *Pinkerton* theory that he is guilty anyway merely because a co-conspirator had possessed a firearm. The co-conspirator could be any co-conspirator, not necessarily one on trial — without even proof as to who it was. The Court went to some trouble to require a bill of particulars on two past occasions to specify the instances of firearms possession by each of the four defendants charged in Count Four and the type of liability charged. A *Pinkerton* instruction would totally side-step all of that hard work and defeat the reliance placed on the two bills of particulars extracted from the government.

The number of permutations for vicarious liability would be vastly expanded by the omnibus proposal, for as to all nineteen counts it would allow the jury to hold the charged defendant responsible if the act was perpetrated by any RICO co-conspirator, including any of the thirty or so non-charged "homies."  Even if the actual perpetrator could not be identified, it would be enough, under the proposal, for the jury to conclude that the crime surely was done by one or more RICO co-conspirators.

Is there sufficient evidence in the trial record to justify these many permutations?  In the contingency — the only contingency that matters — that the charged defendant himself was not the perpetrator of the substantive count, the Court doubts that all or even most of the permutations would be adequately covered by the evidence.  The last-minute submission left no time to vet the many permutations.  Nor did the government's submission lay out the evidence to support the instruction — not even as to a single permutation.

In this lengthy trial, the government's late proposal came only after the recent ruling eliminating the entrapment defense as to all counts and all defendants.  Had the proposal come earlier, in evaluating the entrapment issue the Court would have had to evaluate whether the actual perpetrators — including RICO co-conspirators not on trial — had been entrapped.  The lateness of the proposal prejudiced the process by skipping over that step.  In a similar way, it would have been appropriate to address the issue of whether the actual perpetrator was a juvenile at the time of the charged offense.  The surprise timing of the instruction and its overbreadth have deprived us of this opportunity.

The first three counts allege three different conspiracies.  If the first — the RICO conspiracy — is proven as to a defendant, then the jury will already be required to make further RICO conspiracy findings, namely whether (i) murder was a contemplated predicate act and (ii) whether conspiracy to commit murder was a contemplated predicate act, that is, whether there was contemplation of a sub-conspiracy within the RICO conspiracy.  These will already be over and beyond the two other conspiracy theories of Counts Two and Three.  Put differently, we are already asking the jury to keep straight a number of overlapping conspiracy compositions with subtle but important distinctions.  To this elaborate structure of

4

1  counts, the government would layer on yet another conspiracy inquiry — the *Pinkerton*
2  conspiracy layer with its attendant contingencies described above. Doing so, the Court is
3  convinced, would impose an undue risk of prolix and confusing jury instructions. *See*
4  *Heredia*, 483 F.3d at 923 (explaining that in deciding whether or not to give a proposed
5  instruction, the trial judge should consider whether the proposed instruction would unduly
6  confuse the jury).

7  Although our court of appeals has affirmed VICAR murder convictions based on a
8  *Pinkerton* theory of liability, those decisions have involved more targeted theories of
9  *Pinkerton* liability than present in our case. In *United States v. Houston*, __ F.3d __, 2011
10 WL 3319423 (9th Cir. Aug. 3, 2011), a *Pinkerton* instruction was given for two specific
11 VICAR murders — one that the defendant directly participated in by stabbing the victim and
12 another that the defendant indirectly participated in by encouraging his co-conspirators to plan
13 and launch an attack on the same day. The perpetrators were identified, as were their roles in
14 the murders. Moreover, our court of appeals did not rule that a *Pinkerton* instruction was
15 required. Instead, it simply ruled that giving a *Pinkerton* instruction for the two VICAR
16 murder counts was not "plainly erroneous." Similarly, in *United States v. Bingham*, __ F.3d
17 __, 2011 WL 3332325 (9th Cir. Aug. 24, 2011), a decision arising out of same facts as
18 *Houston*, our court of appeals again addressed *Pinkerton* liability in the context of two
19 specifically identified VICAR murders for which the perpetrators of the substantive offense
20 were identified.

21 If the government's proposal had been timely, had been tailored to a specific count,
22 and had been accompanied by an adequate summary of proof for each *Pinkerton* element, then
23 the Court might have allowed it after hearing. But the government sought a sweeping
24 across-the-board theory without anchoring its permutations in evidentiary support in the
25 record and without allowing adequate time to vet the expansive proposal. No decision has
26 been found blessing the omnibus *Pinkerton* proposal made by the government.

27 In sum, this is not a simple case like *Pinkerton* where the evidence clearly shows who the
28 substantive actor was and how the act furthered the conspiracy. Our case is more difficult in

5

counts, defendants, untried co-conspirators and complexity of the conspiracies. The *Pinkerton* theory proposed by the government suffers from lateness, overbreadth, a failure to anchor its many permutations in the record and would complicate this already-complicated case to the breaking point of due process.[2] For these reasons, the proposed instruction was rejected.

Dated: August 15, 2011

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[2] Although this is a large trial involving seven defendants and twenty-two interlocking counts, the trial has been conducted in such a way to maintain clarity and the Court is convinced that both sides have obtained a fair trial. This fairness, however, would be disrupted by the last-minute complication that the government would layer on top of the existing instructions.

6